STATE

v.

James GOODREAU.

No. 88–175–C.A.

Supreme Court of Rhode Island.

May 26, 1989.

James E. O'Neil, Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., for plaintiff.

Sandra A. Blanding, Amato A. DeLuca, Revens & DeLuca Ltd., Warwick, for defendant.

## OPINION

SHEA, Justice.

The defendant, James Goodreau, appeals from his conviction in the Superior Court. Goodreau was charged with a fifteen-count indictment: two counts of first-degree sexual assault, ten counts of second-degree sexual assault, one count of extortion and blackmail, and two counts of simple assault and battery. The charges involved alleged assaults on six young women while they attended high school. The defendant was one of their teachers. The jury found him guilty of three counts of second-degree sexual assault in violation of G.L.1956 (1981 Reenactment) § 11–37–4, as amended by P.L.1984, ch. 59, § 1, and one count of simple assault and battery in violation of G.L.1956 (1981 Reenactment) § 11–5–3. He was sentenced to six years for each second-degree sexual-assault charge, four years suspended with four years of probation upon release, and one year on the assault-and-battery charge, six months suspended with six months of probation upon release, all sentences to run concurrently. We affirm.

The first three counts of the indictment involved a young woman whom we shall call Amy.[1] Amy was defendant's student at Lincoln High School from 1979 through 1982. She testified about a complicated friendship that developed among Goodreau, his wife, and herself. The Goodreaus had an enormous effect on her, and she felt close to both of them. She testified that in December of 1979, when she was fifteen years old, defendant forced her to have sexual intercourse with him against her will and that during this incident defendant threatened that he could kill her in three seconds. In December of 1984 defendant again forced her to have sexual intercourse with him, threatening to kill her if she told anyone. During her testimony Amy also said that in September of 1980 defendant threatened her and forced her to perform fellatio on him at a rest area on Route 95 in Massachusetts. She also said that in August of 1981 she went to Cape Cod, Massachusetts, with Goodreau's wife for the weekend. Amy did not know that defendant was meeting them on the Cape. That evening in the hotel room Goodreau and his wife attempted to seduce Amy into sexual involvement in a menage a trois. No criminal charges were brought against defendant as a result of these latter two allegations.

The defendant denied ever forcing Amy to have sexual intercourse with him. He

---

1. The fictional names Amy, Beth, and Cathy have been adopted to protect the victims' identities.

testified that they fell in love and had sexual relations beginning in the fall of 1980 and ending in the fall of 1981, even though he married his wife in December of 1980. The jury found defendant not guilty on all three counts involving Amy.

The next complainant, whom we shall call Beth, alleged that on six separate occasions during the last three months of 1985, Goodreau engaged in sexual contact with her by force or coercion. The jury found that three of these incidents amounted to second-degree sexual assault.

Beth met Goodreau in 1984 when she was a freshman at Lincoln High School because her older sister was in his history class. The following year, when she was fifteen, defendant was Beth's history and homeroom teacher. She testified that in September she had friendly conversations with defendant but beginning in October of 1985, he started making sexual comments to her: asking her to have sex with him, telling her that he loved her, asking her to stay overnight at his house, and telling her he would divorce his wife and run away with her. She testified that she believed him when he made these statements.

In December of 1985, while she was in the hallway at school getting books out of her locker, defendant came up behind her, put his hands under her arms, and grabbed her breasts while telling Beth that she was pretty and that he would like to have sex with her. She testified that she in no way permitted this behavior.

On a separate occasion, also in December, defendant again came up to her from behind while she was getting books out of her locker in the hallway and patted her buttocks. She turned to defendant and told him that she did not want him to do that. He responded, "Why wouldn't you want me to touch it? It's so pretty. It's just what I want."

On a third occasion, after a school meeting, Beth and defendant were talking in the coat room at the back of the classroom. She was upset that day because of other personal matters and was sharing these matters with defendant. As they talked, he hugged her and told her he wanted to take her away, to take care of her, and to have sex with her right there and then. After she said no, defendant urged her repeatedly to trust him and said that this, having sexual relations, was the right thing for her to do. The defendant again came up from behind and grabbed her buttocks, with more force than ever before. Beth did not know defendant was about to grab her buttocks, nor did she permit this action. This frightened her, and she suggested that she had better leave the school building. The defendant wanted to leave with her, but she refused.

The defendant denied ever touching Beth's breasts or grabbing her buttocks. He also denied ever telling Beth that he loved her and that he would divorce his wife to run away with her.

A third complainant, whom we shall call Cathy, testified that defendant assaulted her at school in January of 1986. The defendant was Cathy's history teacher when she was a sophomore at Lincoln High School during the 1985–86 school year. She had met and spoken with Goodreau prior to September of 1985 because her older sister was friendly with Goodreau when she was at Lincoln High School in the late 1970s and early 1980s. He would visit Cathy's older sister at her home. Cathy testified that in September of 1985, when she was fifteen years old, defendant began making comments of a sexual nature to her. He would tell her that her breasts were getting larger, that he wanted to have sex with her, and that he "was the best" (presumably referring to his sexual prowess, not his teaching ability).

The assault and battery of Cathy occurred in early January of 1986. She testified that she was walking in the school hallway on the way to her classroom when defendant came out of his classroom, grabbed her by the shoulders, pinned her against the locker, and said, "I love you. I love you. I want to have sex with you." She testified that he was not laughing or smiling but just staring at her. Cathy looked at him and said, "Wouldn't that be funny if I yelled rape." She laughed, but he did not; he just kept staring at her.

She testified that this incident upset her and that although her mother told her that this was just Goodreau's sense of humor, she did not think so and tried to avoid defendant. The defendant denied this incident.

On appeal defendant argues that he was denied a fair trial by being forced to try the three counts involving Amy with the remaining counts. He contends that the alleged criminal acts against Amy are unrelated to the other crimes charged and are therefore inadmissible and should have been severed. Further, he argues that Amy's testimony substantially prejudiced the jury against him, warranting a reversal of the trial justice's denial of his motion to sever.

The defendant asserts that there were facts critical to Amy's allegations that were highly prejudicial and completely unrelated to the incidents that were the basis for the remaining counts. The events involving Amy occurred between 1979 and 1984 whereas the remainder of the alleged assaults occurred between October 1985 and January 1986. Further he argues that Amy's allegations involved incidents that constituted first-degree sexual assault and extortion when defendant allegedly threatened Amy with violence or death. The remaining counts, alleging second-degree sexual assault and assault and battery, were markedly different in that they did not involve the removal of any clothing or life-threatening remarks.

■ The granting or denying of a motion to sever is not a matter of right but is within the sound discretion of the trial justice. *State v. Northup*, 486 A.2d 589, 594 (R.I.1985); *State v. Whitman*, 431 A.2d 1229, 1233 (R.I.1981); *State v. Sharbuno*, 120 R.I. 714, 717, 390 A.2d 915, 917 (1978). We shall not disturb the trial justice's decision unless we find the trial justice clearly abused discretion, causing the defendant to suffer substantial prejudice impinging on the right to a fair trial.

This court has cautioned against the use of evidence of other criminal activity to show the defendant's propensity to commit the crime charged. *Whitman*, 431 A.2d at 1231 (citing *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978), and *State v. Mastracchio*, 112 R.I. 487, 312 A.2d 190 (1973)). Such evidence is generally irrelevant. *State v. Cardoza*, 465 A.2d 200, 202 (R.I. 1983). However, evidence of other crimes is admissible and relevant if it establishes the defendant's "guilty knowledge, intent, motive, design, plan, scheme, system, or the like * * *." *Whitman*, 431 A.2d at 1231 (citing *State v. Delahunt*, 121 R.I. 565, 569, 401 A.2d 1261, 1263 (1979); *State v. Jalette*, 119 R.I. at 624, 382 A.2d at 532; *State v. Colangelo*, 55 R.I. 170, 173–74, 179 A. 147, 149 (1935)).

Our review of the record reveals that Goodreau's pattern of behavior was the same with all the young women testifying against him. He first gained their confidence, made them feel important and special, and listened to their problems with family, school, or friends. They all thought of him as a friend. He complimented them on how they looked and told them they were beautiful. Eventually, with some students sooner than with others, this tone would change and he would start talking about sex, about their bodies, and in some instances about love. Then he became more aggressive, touching or grabbing their breasts and buttocks, inviting them to his house to have sexual relations. Amy's testimony was that Goodreau attained his goal, that he had sexual relations with her. The testimony of the other young women differs only in that they successfully resisted his sexual advances. Amy's testimony reveals that defendant had the same intent, motive, and scheme with Amy as he did with the other complainants. The evidence relating to Amy's allegations is therefore admissible and properly joined to the remaining charges.

In *State v. Patriarca*, 112 R.I. 14, 30, 308 A.2d 300, 311 (1973) (quoting *Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir. 1964)), we cautioned against the potential prejudice caused by joinder:

"(1) [The defendant] may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to

infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

We also warned against the " 'latent feeling of hostility engendered by the charging of several crimes as distinct from only one.' " *Id.* However, we have also stated that in support of a motion for severance, the defendant must demonstrate substantial prejudice, not merely the potential or likelihood of prejudice. *Whitman,* 431 A.2d at 1233. *See also State v. Bernier,* 491 A.2d 1000, 1003 (R.I.1985) ("a defendant must demonstrate substantial prejudice resulting from the joinder * * *. [d]isadvantage alone is not sufficient") (citing *State v. Whitman,* 431 A.2d 1229 (R.I. 1981) and *State v. Sharbuno,* 120 R.I. 714, 390 A.2d 915 (1978)).

Our review of this record persuades us that defendant has failed to show prejudice. The jurors were meticulous and discerning in their review of the evidence. They did not find defendant guilty of any of the charges involving Amy, which were more serious than the other charges. It could be argued that, since Cathy and Beth were able to resist defendant and prevent a first degree sexual assault, the jury disbelieved Amy's claim of forced sexual assault. The joinder therefore worked in defendant's favor. Nor did the jury find him guilty of the majority of the second-degree sexual-assault charges involving the other complainants. The jury was able to distinguish between identical charges brought by the same complainant involving very similar alleged acts by defendant. Beth claimed six instances of second-degree sexual assault within three months whereas the jury convicted Goodreau of committing only three of these sexual assaults. The jury also distinguished between the two alleged assault-and-battery charges brought by Cathy, finding defendant guilty of one and not guilty of the other. The defendant has failed to establish prejudice from the denial of his motion to sever.

▪ The defendant next raises the trial justice's denial of his motion for judgment of acquittal. He asserts that the state failed to prove that Goodreau committed second-degree sexual assault against Beth or that he committed assault and battery against Cathy.

In reviewing the trial court's ruling on a motion for judgment of acquittal, this court uses the same standard used by the trial justice. We review the evidence and draw all reasonable inferences favorable to the state. If the evidence viewed in this light is insufficient to warrant submitting the case to the jury, the motion should be granted. *State v. Burke,* 522 A.2d 725, 734 (R.I.1987).

The defendant contends that the state failed to prove that Beth resisted Goodreau's touches or that he used force or coercion to accomplish the touchings within the meaning of G.L.1956 (1981 Reenactment) § 11–37–1(B) or (C), as amended by P.L.1984, ch. 152, § 1.

General Laws 1956 (1981 Reenactment) § 11–37–4, as amended by P.L.1984, ch. 59, § 1 provides in pertinent part: "A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist: * * * (B) The accused uses force or coercion." The applicable definition of "force or coercion" is found in § 11–37–1(B). The accused uses "force or coercion" when he or she "overcomes the victim through the application of physical force or physical violence."

We have stated that the prosecution must prove force beyond that necessary to commit the sexual assault in order to sustain a conviction for first-degree sexual assault. *State v. Jacques,* 536 A.2d 535, 537 (R.I.1988). In order to meet this standard, the prosecution must merely show that the victim did not consent to the act. If the victim resisted the act, then the defendant has used force beyond that necessary to commit the sexual assault. The victim need not incur bodily harm or exhibit great physical resistance. The victim is only required to "offer such resistance as seems reasonable under all the circum-

stances." *State v. Carvalho*, 122 R.I. 461, 467, 409 A.2d 132, 135–36 (1979).

We find that Beth's resistance to defendant's offensive touchings was reasonable in the circumstances and is ample proof that she did not consent to the touchings. In all three instances the touchings and grabbings were unexpected, and she pulled away. On two of the occasions she expressed her displeasure with defendant's actions. In these circumstances we find that there was sufficient evidence of force within the meaning of § 11–37–1(B) to warrant submitting the second-degree sexual-assault charges to the jury.

The defendant also argues that the state failed to meet its burden of proving the elements of assault and battery by defendant against Cathy. He reasons that the state failed to prove that defendant intended to hurt Cathy or that Cathy was in fear of violence. We disagree.

We have defined assault as "any unlawful attempt or offer, with force or violence, to do a corporal hurt to another, whether from malice or wantonness. The offense may consist, also, in putting another in fear of violence." *State v. Jeremiah*, 546 A.2d 183, 186 (R.I.1988) (quoting *State v. Baker*, 20 R.I. 275, 277, 38 A. 653, 654 (1897)). We find that pushing a fifteen-year-old student up against lockers, staring at her, and saying, "I love you. I love you. I want to have sex with you," is sufficient evidence of an attempt, by force, to do physical harm to another. We therefore find that the trial justice was not in error in denying defendant's motion for judgment of acquittal.

The defendant objects to the denial of his motion for a new trial on the same grounds he used in his motion for judgment of acquittal: the evidence is insufficient to prove the alleged sexual assault against Beth or the alleged assault and battery against Cathy. Accordingly, he argues, the trial justice erred in his denial of this motion.

Our standard of review of the trial justice's ruling on a defendant's motion for a new trial requires this court to determine whether the trial justice misconceived or overlooked any evidence relating to a critical issue of the case or was otherwise clearly wrong. *State v. Caruolo*, 524 A.2d 575, 585 (R.I.1987). In reviewing a motion for a new trial, the trial justice assumes the function of a juror and must consider the evidence in light of the charge given to the jury and independently appraise the weight of the evidence and the credibility of the witnesses. The trial justice then determines whether the evidence is sufficient to support the jury's verdict.

In his denial of defendant's motion for a new trial, the trial justice found that, "sitting as a 13th independent juror," the jury's verdict was not against the weight of the evidence. Again we find that there is sufficient evidence of force by defendant and resistance by Beth to support Beth's allegations of second-degree sexual assault and of defendant's attempt by force to do physical harm to Cathy to support her allegations of assault and battery. The trial justice, in his review of defendant's motion for a new trial, did not overlook or misconceive any evidence, nor was he otherwise clearly wrong in his determination.

Finally defendant contends that he should have been permitted to question the prospective jurors during voir dire about any prejudice they might harbor against defendant because he had been indicted by a grand jury. The trial justice did not permit this line of questioning but gave an instruction to the prospective jurors on the presumption of innocence and the significance of an indictment.

Although the trial justice may not hinder the attorneys' attempts to inquire into the objectivity of the prospective jurors, the scope of examination of prospective jurors during voir dire is within the sound discretion of the trial justice. *State v. Taylor*, 423 A.2d 1174 (R.I.1980). We do not find that the trial justice exceeded his discretion when he limited defense counsel's inquiry about the defendant's indictment. The trial justice's instructions properly protected the defendant against any potential prejudice on this issue. While experience teaches us that a prospective jury must be ques-

tioned about their individual personal biases regarding certain traits of the defendant, such as race, gender, or ethnicity, in order to guarantee the defendant a fair trial, we do not believe that a prior indictment is one of the traits that engenders such strong negative feelings from the community at large that it threatens the defendant's right to a fair trial. The trial justice's instruction on the presumption of innocence, in our opinion, gave the defendant adequate protection on this point. *See United States v. Peterson*, 483 F.2d 1222, 1227–28 (D.C.Cir.), *cert. denied*, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973). In this case the jury's verdict amply reflects that the jury was not prejudiced by the fact that the defendant had been indicted. He was acquitted of eleven of the fifteen counts brought against him. There is no evidence of prejudice against the defendant. We find that the defendant received a fair trial.

For these reasons the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.

FAY, C.J., did not participate.