DECISION
This matter is before the Court for decision on Defendant, Timothy Sullivan's, motion to seal and/or delete certain historical information (pertaining to the disposition of his criminal case) which is presently displayed on the Rhode Island Judiciary website. The information is contained within the website's "Adult Criminal Information Database" and can be retrieved by any person simply by submitting the name of the Defendant. The website yields search results only after the user agrees to accept the terms of a disclaimer posted on the site. The presentation of the information via the website is described as a "voluntary service to promote communication between the Judiciary and the public by allowing computerized access to certain information contained in court files." The Judiciary "disclaims any and all responsibility [for] any inaccuracies, context errors, or omissions."
In July of 2001, the Defendant was arraigned on a four count indictment charging him in Counts 1 and 2 with first degree sexual assault, to wit: digital penetration; in Count 3 with assault with intent to commit first degree sexual assault; and, in Count 4 with sexual contact, to wit: breast contact.
In late October and early November of 2003, this Court presided over the Defendant's trial which resulted in a deadlocked jury. Subsequently, the Court dismissed Count 1 of the indictment having previously reserved decision on the Defendant's Rule 29 motion. (See *Page 2 
attached Amended Decision, filed March 1, 2004). In December of 2004, the State dismissed Count 4 pursuant to Rule 48(a) and the Defendant entered nolo contendere pleas to Counts 2 and 3, each of which was amended to a charge of felony assault. The State and the Defendant entered into two consecutive deferred sentence agreements with respect to the disposition of the amended charges.
A user currently seeking information on the website regarding the Defendant's case would receive the following information as to Counts 1 and 4:
Charge #1: First Degree Sexual Assault, Not Guilty By Judgment of Acquittal. 11-Feb-04.
Charge #4: Second Degree Sexual Assault, Dismissed 48(a). 06-Dec-04.
It is the above referenced "unofficial" information which the Defendant moves to seal (not expunge) and delete from the Judiciary website. The Defendant does not seek to seal, alter or delete official records maintained by the Attorney General or the police department.
The Attorney General objects to the Defendant's request contending that, pursuant to R.I.G.L. 1956 § 12-1-12.1(a), only an individual "acquitted or otherwise exonerated of all counts in a criminal case" is entitled to the redress of sealing. (State's Mem. pp. 2-3; emphasis supplied within.) The State further asserts that due to a "strong public policy in favor of public access to Court records . . . the Judiciary['s] . . . choice to grant Internet access to its records should be honored." (State's Mem. pp. 3-4.) In support of its position, the State has furnished an affidavit from Robert T. Baynes, Assistant State Court Administrator of Technology of the Rhode Island Judiciary, which the State contends demonstrates "the practical difficulties and consequences of an order partially sealing an active file in the Court Computer system." (State's Mem. p. 4.) Mr. Baynes, in fact, opines in his affidavit that the proposed, unprecedented deletion of a Court file *Page 3 
from the Judiciary's case management system would be "unlawful." (See Baynes' Aff. p. 4 ¶ 16(a)(b) and (c).) Despite the asserted technological hurdle Mr. Baynes presently interposes, the Defendant's publicly accessible records were amended, apparently without incident, to eliminate the original designation of Counts 2 and 3, (first degree sexual assault and assault with intent to commit first degree sexual assault, respectively) and to reflect the true and accurate disposition of those two counts as nolo contendere pleas to felony assault charges.
The State also asks this Court to apply to the instant case, i.e., "unofficial" court records, the reasoning enunciated in State v.Manocchio, 743 A.2d 555 (R.I. 2000), which held that this Court must be controlled by the "specific criteria and limitations on the expungement and sealing of BCI records that are set forth in the statute. . . ."
This Court declines to accept the State's invitation to equate and/or apply Manocchio's precepts to the matter in controversy. The effect of the Manocchio holding is restricted to the eradication of "entries relating to criminal matters from a BCI report unless the request for relief in that regard falls within the criteria set out by the Legislature." State v. James Briggs, No. 2005-62-C.A. (P2/94—1248A); State v. Anna M. Mathias, No. 2006-13-C.A. (P2/94-3597A) R.I. Supreme Court; filed Nov. 16, 2007 (emphasis supplied) (citingState v. Manocchio, infra, at 558). Defendant Sullivan's request to seal, not expunge, is narrowly confined to the deletion of "unofficial" court records displayed on the Judiciary's website, for which the Judiciary disclaims all responsibility for error.
This Court cannot fathom how the appearance on a judicial website of sexual assault charges against the Defendant which are no longer extant furthers the website's stated mission of promoting communication between the Judiciary and the public. (State's Mem. p. 3.)
On the other hand, for Defendant Sullivan, the offending information is a "modern day *Page 4 
scarlet letter, an easy shorthand way to judge (and sometimes misjudge) an individual's character." Stephen Saltzburg Margaret Love; "Opposing View: Seal Stale Convictions (Old Criminal Records Are UsedUnfairly To Deny Opportunities)", USA Today, Aug. 13, 2007.[1] This Court is of the opinion that an equitable approach, mindful of any defendant's constitutionally guaranteed rights, requires consideration of the ABA's thoughtful recommendation that state governments "develop policies governing access to and use of criminal records for non-law enforcement purposes that would balance the public's right to information against the government's interest in encouraging successful offender reentry and reintegration." Report to the House of Delegates,ABA's Commission on Effective Criminal Sanctions, (Approved by ABA House, Feb. 12, 2007). The report further urges the government to develop a "systematic reporting system that will maximize reliability, integrity, authenticity and accuracy of criminal records." It notes that "a routine background check can also bring up criminal records that did not result in conviction [including, in pertinent part] charges that were dismissed [or resulted in] acquittal[s]."
Defendant Sullivan is merely asking to have removed from judicial website viewing two charges which no longer stand due to acquittal by the Court and voluntary dismissal by the prosecuting authority. The latter authority, as well as law enforcement authorities, will continue to maintain their records and compilations of the Defendant's complete criminal history. No public policy is furthered by the Judiciary's perpetuation of publicly displayed criminal history *Page 5 
information pertaining to charges which simply do not exist.
Thus, Defendant Sullivan's request to seal the information in controversy, as articulated in his motion, is granted.[2] *Page 6 
 The following is an amended Decision in the above entitled matter, dueto typographical errors in the original Decision filed on February 11,2004.
 DECISION THUNBERG, J. The defendant has moved for judgment of acquittal on all four counts in the indictment.
The first two counts charge that the defendant committed first degree sexual assault (digital penetration) through the use of force and/or coercion. The victim testified, as to the first count, that she was sleeping on a cot and "felt someone's hand reach underneath [her] underpants and put their fingers inside of [her]." (Tr. at 27-28). When asked what she did at that point, she responded that she "woke up" and "immediately moved away" and then "it happened again." (Tr. 28).
As to this charge it is essential that the state prove the element of "force or coercion" beyond a reasonable doubt. The statutory scheme contemplates factual scenarios in which penetration alone does suffice to constitute first degree sexual assault, e.g., overcoming the victim through the element of surprise, or the taking advantage of a physically helpless victim. This is not the case here. Furthermore, it is essential that the force exerted (or the threat of its use) occur before the penetration. State v. Jacques, 536 A.2d 535 (1988). *Page 7 
In Jacques, the State had argued that the force sufficient to accomplish penetration may constitute sufficient force to support a conviction for sexual assault. Citing State v. Babbitt, 457 A.2d 1049
(R.I. 1983), our Supreme Court stated that every element needed to prove rape under the common law must also be proved under the sexual-assault statute. Without question, proof of overcoming the victim's resistance by force, fear, or other prohibited conditions was required under common law. See also State v. Golden, 430 A.2d 433, 435 (R.I. 1981). As to Count 1, proof is lacking as to the application of physical force or physical violence before and beyond the force required to accomplish the act. Therefore, as to Count 1, the defendant's motion for judgment of acquittal must be granted.
As to Count Two, the victim testified that after she woke up, following the "Count 1 incident" she "immediately moved away to the — sort of far away from that person as possible. . . and then it happened again." (Tr. 28). After the second penetration the victim "got up and. . . walked into the bathroom." (Tr. 28).
In Jacques, the Supreme Court cited the act of "squirming away" as a form of resistance. (The victim in that case was also screaming and crying — which is not the case here). In State v. Gooding, 560 A.2d 318
(R.I. 1989), "pulling away" from the predator was considered by the Court to be a reasonable form of resistance. (There the victim was the 15 year old student of the defendant teacher, distinguishing that factual scenario from the scenario under discussion).
As to Count 3, the victim testified that while she was lying on the bathroom floor it "felt like" (from behind) that the defendant was trying to put his penis into her. (Tr. 34). Her resistance to this advance was again to "move away" and to "elbow" the defendant, pushing behind her with her hand. (Tr. 34). After five or ten minutes, the defendant returned to the bathroom, knelt down behind the victim, and put his hand on her left breast. (Count 4) (Tr. 36). *Page 8 
The victim then "scrunched up her face. . . trying to look angry" and remembers "pushing him away." During none of the assaults were words exchanged between the defendant and the victim. The four acts occurred in utter and total silence. The only statement attributed to the defendant was the phrase "you're freaking me out," uttered when he approached the bathroom, where the victim was sleeping in her makeshift bed.
In ruling on a motion for judgment of acquittal, the Court is required to view all inferences in the light most favorable to the State. Theoretically, a jury could regard the squirming, pushing, and moving away of the victim as reasonable resistance. Although an observer could also consider the behavior of this educated, bright, self-reliant, composed woman to be inexplicably timorous, such an inference cannot be made at this juncture.
Therefore, as to Counts Two, Three and Four, it would be within the province of the jury to determine whether the victim's resistance was feeble and ineffectual or, in fact, based upon the evidence, reasonable under all of the circumstances.
Thus, the defendant's motion is granted as to Count One, and denied as to Counts Two, Three, and Four.
[1] See also Robert M.A. Johnson, "Have All Convictions Become A LifeSentence?," Criminal Justice Magazine, Chair's Column, Summer, 2007 ("With the boom in information technology over the past decade, profit seeking entrepreneurs have encouraged the public to believe that everyone has a `right to know' the details of anyone's criminal history, no matter the type of crime or the individual's age at the time of the offense or conviction. . . . In many circumstances today, individual criminal records have been harvested from government offices by private companies, who publish and sell the data using the Internet. Some states have bought into this new trend and created their own websites for searching individual criminal histories.").
[2] This Court is aware of Executive Order 2007-09 promulgated by the Chief Justice on November 21, 2007. However, in the circumstances of this case, after hearing arguments from counsel for both sides and reviewing memoranda of law submitted by both, this Court must balance the rights of privacy and re-integration as identified and argued by the petitioner with the arguments advanced by the state regarding the applicability of State v. Manocchio, infra, and the impracticability of individual Count deletion. (See Aff. of Robert T. Baynes.) *Page 1