Anne M. IACAMPO, Plaintiff,

v.

HASBRO, INC., James Booth, Peter Godfrin, and Others Yet Unknown, Defendants.

C.A. No. 94–0650L.

United States District Court, D. Rhode Island.

June 6, 1996.

566

William J. Conley, Jr., Pass, Caruolo & Conley, East Providence, RI, for Plaintiff.

Joan A. Lukey, Jane C. Pickrell, Hale & Dorr, Boston, MA, John A. Tarantino, Adler, Pollock & Sheehan, Inc., Providence, RI, for Defendants.

## *DECISION AND ORDER*

LAGUEUX, Chief Judge.

■ Like a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law. This matter is before the Court on defendants' partial motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, to compel a more specific statement of plaintiff's claims pursuant to Fed.R.Civ.P. 12(e). Defendants Hasbro, Inc. ("Hasbro"), James Booth ("Booth"), and Peter Godfrin ("Godfrin") (collectively, the "defendants"), seek dismissal of Counts III, IV, V, VI, IX (in part), X, and XI of the Complaint for failure to state cognizable claims; the defendants also ask that the plaintiff, Anne M. Iacampo ("Iacampo"), be ordered to state her claims under Counts I, II, VII, and VIII (as well as under any that survive dismissal) with great-

er specificity. Iacampo contests the defendants' motion, arguing that none of her many legal theories are barred as a matter of law, and that the facts as alleged in her Complaint suffice to state prima facie claims under each of them.

The Court grants the defendants' Fed. R.Civ.P. 12(b)(6) motion in part, denies it in part, and denies the defendants' Fed.R.Civ.P. 12(e) motion. For the reasons set forth below, the Court concludes that, *inter alia,* (i) as a matter of law, supervisory employees may be found individually liable under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e to 2000e–17 ("Title VII"); the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213 ("ADA"); and analogous state statutes; (ii) Iacampo has alleged the elements of simple assault and/or battery and second degree sexual assault on the part of Booth with sufficient particularity to make out a prima facie claim of liability under R.I. Gen.Laws § 9–1–2 (1985); (iii) section 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793 (1985) ("§ 503"), does not preempt state and common law third-party beneficiary claims arising out of federal contracts, unless those claims are grounded solely in language mandated by the Rehabilitation Act itself; (iv) accepting Iacampo's allegations as true, her third-party beneficiary claims arising out of state contracts may not be dismissed at this stage, though they may fall to summary judgment at some later point; (v) Iacampo's claims for negligent infliction of emotional distress fail as a matter of law; and (vi) the Rhode Island Workers' Compensation Act, R.I. Gen.Laws §§ 28–29–1 to –37–31 (1986) ("WCA"), bars Iacampo's intentional infliction of emotional distress claims. Defendants' 12(b)(6) motion is therefore denied as to Counts III, IV, V, VI, and IX (in part), and granted as to Counts X and XI.

As to defendants' Rule 12(e) motion, although the Complaint propounds a stunning array of legal theories and allegations, it is not so general and opaque as to prevent the defendants from pleading adequate defenses. Consequently, the defendants' Rule 12(e) motion is summarily denied.[1]

## I. Factual Background

■ For the purposes of deciding these motions, the Court must treat the factual allegations in the Complaint as true. *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994) *cert. denied,* — U.S. ——, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995).

Hasbro, Inc., the well-known toy maker, is a corporation with its headquarters and principal place of business in Rhode Island; it employs more than 100 people and engages in interstate commerce. Iacampo went to work for Hasbro in 1986; at present, she is a collection analyst in the credit department. In 1991, she was diagnosed as having multiple sclerosis. Despite her illness, and with reasonable accommodation, Iacampo has remained qualified for her position, able to perform the essential tasks of that function. However, Iacampo states that at "certain times," she has been disabled and/or unable to work because of the defendants' misconduct or because Hasbro failed to offer her reasonable accommodation. Complaint at 3.

Iacampo states that since 1991, she has been subjected to an ongoing pattern of sexual harassment and other discrimination by Booth, her supervisor. Iacampo alleges that at various points between May 1992 and May 1994, Booth entered her work cubicle and "played with her hair, hugged her from behind, rubbed her with his hands, and/or pressed his genitals against [her]. This conduct was often repeated out of the cubicle. Some of these acts involved rubbing his genital area against her for his sexual gratification." Complaint at 3–4.

In February 1993, Iacampo spoke to Godfrin, Booth's immediate supervisor, about Booth's unwelcome physical contact. Giving her reasons in detail, she asked to be reassigned to a new work area, away from him. According to Iacampo, Godfrin listened and told her, "Well, I have to be fair to [Booth]."

---

1. At heart, this is a simple sexual harassment and disability-based discrimination case, made complicated by overly creative lawyering. As Shakespeare wrote: "So quick bright things come to confusion." W. Shakespeare, *A Midsummer's Night Dream,* act 1, sc. i, l. 149 (1595–1596).

Complaint at 4. He then tried to right the situation by rotating Iacampo and another employee with two others; however, after the two objected, Godfrin abandoned his efforts and the reassignment did not happen.

The Complaint further alleges that shortly thereafter, Booth summoned Iacampo to his cubicle and told her that Godfrin had informed him of the request for reassignment. Hostile and abusive, he said she would never be transferred. (Iacampo later called Godfrin, who denied speaking to Booth.) Subsequently, Iacampo has suffered "additional scrutiny, disparate instructions and supervision, adverse evaluation, the harassment previously noted, and other discriminatory conduct." Complaint at 4. Booth's unwelcome advances continued, culminating between January and May 1994, by which point Iacampo could not concentrate on her work.

In April 1994, Booth made statements to Iacampo about her whereabouts the previous weekend; Iacampo alleges that before and after that date, Booth was "following, stalking, or otherwise harassing her." Complaint at 4. At unspecified times, Booth also harassed Iacampo with regards to her disability. She alleges that Booth taunted her, saying that she "would be in a wheelchair"—an apparent reference to her multiple sclerosis. Complaint at 5.

Iacampo alleges a plethora of harms as a result of Hasbro, Booth, and Godfrin's actions and inactions. In sum, she contends that she was a) "prevented from performing at the levels of which [she] is capable"; b) "unfairly rated, otherwise denied employment opportunity on the basis of sex, disability or appearance of disability, or subjected to a hostile employment environment"; c) "not promoted or advanced as she should or would have been absent this unlawful conduct;" d) made to suffer other adverse employment consequences; and e) subjected to "exacerbation of her illness, physiological and psychological injuries, the irremediable loss of earning and life enjoyment capacity, degradation of the quality of her life, and other personal and economic damages." Complaint at 5. She further states that the discrimination and harassment have rendered continued employment impossible; on August 2, 1994, her multiple sclerosis suddenly worsened, allegedly because of defendants' misconduct, and she has not worked since then.[2]

In late 1994, Iacampo retained counsel and complained to the chairman and general counsel of Hasbro, who initiated an internal investigation. (Whether or not Hasbro completed the review, and what it found, is unclear from the Complaint.) Nearly simultaneously, Iacampo filed charges with the Rhode Island Commission for Human Rights, requesting that the Commission defer jurisdiction to the United States Equal Employment Opportunity Commission ("EEOC"). On December 2, 1994, the EEOC's area office issued a notice of right to sue, and on December 5, 1994, Iacampo brought suit in this Court.

Iacampo's claims arise under Title VII; the ADA; R.I. Const. art. I, § 2; the Rhode Island Fair Employment Practices Act, R.I. Gen.Laws § 28-5-1 to -39 (1986 & Supp. 1993) ("FEPA"); the Rhode Island Civil Rights Act of 1990, R.I.Gen.Laws § 42-112-1 to -2 (1993) ("RICRA"); and the common law. Count I alleges a disparate impact claim against Hasbro under Title VII, the ADA, and analogous state laws. Count II asserts a disparate impact—unwritten practices claim against Hasbro, Booth, and Godfrin under Title VII, the ADA, and state law. Count III presses a sexual harassment and disparate treatment claim against Booth under Title VII, the ADA, and state law. Count IV maintains that Booth retaliated against Iacampo after she reported his actions to Godfrin, a violation of Title VII, the ADA, and analogous state statutes. Count V asserts that Booth's conduct violated Rhode Island's criminal statutes, thus making him civilly liable to Iacampo under R.I. Gen.Laws § 9-1-2 (1985). Count VI alleges that Godfrin discriminated against Iacampo, thus rendering him liable to Iacampo under Title VII, the ADA, and related state statutes; Count

---

**2.** The Court cannot discern what Iacampo's present employment status is—the Complaint is self-contradictory in this regard. However, adjudica-tion of this motion does not require that the confusion be dispelled.

VII pursues the same claim, under the same statutes, against Hasbro. Count VIII seeks damages and other relief from Hasbro under the ADA and analogous Rhode Island laws, alleging that the company failed to make reasonable accommodation for Iacampo's multiple sclerosis. Count XI comprises a number of independent claims against Hasbro—that the company violated provisions of the Rhode Island Constitution, the FEPA, and the RICRA, and breached the non-discrimination terms of contracts struck with the United States and Rhode Island governments, of which Iacampo was an asserted third-party beneficiary. And last, Counts X and XI assert claims on the basis of intentional and negligent infliction of emotional distress, respectively, against Hasbro, Booth, and Godfrin.

After Iacampo's first counsel—now excused from this case—issued a press release entitled "Sexual Harassment in Santa's Workshop?" the defendants filed a counterclaim against Iacampo, claiming that she had defamed Booth and invaded his privacy by placing him in false light.

On December 27, 1994, the defendants filed this motion pursuant to Fed.R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 12(e). As to Counts II,[3] III, IV, and VI, the defendants contend that, as a matter of law, supervisory employees cannot be individually liable under Title VII, the ADA, and related state laws. The defendants further argue that the Complaint fails to establish the elements of simple assault, sexual assault, or any other crime, thus meriting dismissal of Count V. Addressing Count IX, the defendants assert that any third-party beneficiary claims arising out of contracts between Hasbro and the federal government are preempted by the remedy provisions of § 503 of the Rehabilitation Act; as for contracts between Hasbro and the State of Rhode Island, the defendants maintain that Iacampo cannot show

that she was an intended beneficiary of anti-discrimination clauses contained within the agreements.[4] Last, the defendants argue that the Rhode Island Workers' Compensation Act bars Counts X and XI, the intentional and negligent infliction of emotional distress claims.

The Court heard argument on the motions on April 13, 1995, and then took this matter under advisement. The parties were granted additional time to prepare memoranda on the question of individual liability for supervisory employees under Title VII and the ADA. After consideration of this admittedly unsettled issue, and the other questions raised by defendants' motions, the Court now makes the following decision.

## II. Jurisdiction and Standard of Review

■ The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331. The Court will exercise supplemental jurisdiction over Iacampo's state-law claims pursuant to 28 U.S.C.A. § 1367(a), as they clearly "form part of the same case or controversy." *Id.; see Hart v. Mazur,* 903 F.Supp. 277, 281 (D.R.I.1995) (setting forth the analysis required prior to a federal court's extension of supplemental jurisdiction).

■ A claim need only show the faintest likelihood of validity to survive a Rule 12(b)(6) motion. "We must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto,* 14 F.3d 697, 700 (1st Cir.1994). "The question before the Court, therefore, is whether the Complaint, viewed in the light most favorable to [Iacampo] and with all doubts resolved in her favor, states any valid claim for relief." *Hart v. Mazur,* 903 F.Supp. at 279; 5A Charles A. Wright &

---

3. Count II presses a disparate impact—unwritten practices claim against Hasbro, Booth, and Godfrin under Title VII, the ADA, and similar state laws. Insofar as Count II strives to impose individual liability on Booth and Godfrin, the Court will group it with the other Counts whose retention, or dismissal, turns on whether supervisory employees may be found individually liable under Title VII, the ADA, and analogous Rhode Island statutes.

4. In fact, Hasbro denies that any such contracts exist. For the purposes of this motion, however, the Court must accept Iacampo's allegations as true, and assume that Hasbro has entered into agreements with the State and its agencies.

Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990).

■ A motion for a more definite statement pursuant to Fed.R.Civ.P. 12(e) challenges a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading[.]" Rule 12(e) is rarely invoked; when faced with an opaque, overly general pleading, a court is more likely to defer ruling on a motion to dismiss while granting leave to amend, or to enter an interlocutory order dismissing the complaint but with leave to amend within a set period of time. *Cash Energy, Inc. v. Weiner,* 768 F.Supp. 892, 897 (D.Mass.1991). If a party refuses to comply with a court's order under Rule 12(e), the offending pleading may be stricken.

## III. Analysis

### A. Counts II (in part), III, IV, and VI: Whether Booth and Godfrin May Be Held Individually Liable as Supervisory Employees Under Title VII, the ADA, the FEPA, and the RICRA

Five years ago this Court held, in *Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205 (D.R.I.1991), that supervisory employees may be held individually liable for sexual harassment under Title VII of the Civil Rights Act of 1964. *Id.* at 1210–11. In the present case, the defendants have asked the Court to reverse itself, and dismiss Counts II (in part), III, IV, and VI as to Booth and Godfrin on the grounds that Title VII and the ADA impose liability on employers only, and not on employees with supervisory power. The Court declines the defendants' invitation; furthermore, the Court also concludes that the FEPA and the RICRA permit suit against individual defendants, thus negating whatever windfall Booth and Godfrin might gain through a new interpretation of Title VII and the ADA.

The Court recognizes that the issue of individual liability for supervisory employees under Title VII has divided circuit against circuit and court against court. Title VII prohibits discrimination by an "employer" on the basis of sex. 42 U.S.C. § 2000e–2(f). "Employer" is defined as:

[A] person engaged in an industry affecting commerce who has fifteen or more employees ... *and any agent of such a person*[.]

42 U.S.C. § 2000e(f) (emphasis added). The ADA, which bars discrimination by employers on the basis of disability, 42 U.S.C. § 12112(a), defines "employer" likewise:

[A] person engaged in an industry affecting commerce who has 15 or more employees ... *and any agent of such person*[.]

42 U.S.C. § 12111(5)(A) (emphasis added). "Agent" has subsequently been defined in the Title VII and ADA context as any employee exercising supervisory power or control within a company. *See, e.g. Showalter,* 767 F.Supp. at 1210–11. Federal courts, applying the agent clause of Title VII, have disagreed on the question of whether Congress intended to impose only *respondeat superior* liability on employers for the acts of their agents, or whether the employer and the agent were to be jointly and severally liable for discrimination perpetrated by the agent. (A parallel, though muted, debate has surrounded the ADA's agent clause, with courts deploying Title VII arguments in the ADA forum. *See, e.g. U.S. E.E.O.C. v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1279–82 (7th Cir.1995). In the First Circuit, no matter what the result, courts define "employer" the same way in both statutes. *See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.,* 37 F.3d 12, 16 (1st Cir.1994).)

In the absence of any guidance from Congress or the Supreme Court, the circuit courts have decided both for and against individual liability under Title VII. *Compare, e.g. Paroline v. Unisys Corp.,* 879 F.2d 100, 104 (4th Cir.1989), *rev'd in part, aff'd in relevant part,* 900 F.2d 27 (4th Cir.1990) (supervisory individuals may be liable under Title VII) *with Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587–588 (9th Cir.1993), *cert. denied,* 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994) (no individual liability) *and Grant v. Lone Star Co.,* 21 F.3d 649, 651–53 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994) (same). Within the First Circuit, the district courts have demonstrated a marked lack of

unanimity: On the same day, November 29, 1995, a district court in Maine ruled that an individual is not an "employer" under Title VII, *Caldwell v. Federal Express Corp.*, 908 F.Supp. 29, 36 (D.Me.1995); a district court in Massachusetts held that agents *were* subject to liability under Title VII, *Ruffino v. State Street Bank and Trust Co.*, 908 F.Supp. 1019, 1047–48 (D.Mass.1995); and a third district court, in New Hampshire, found that an agent of an employer is not personally liable under the ADA. *Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1064–65 (D.N.H.1995).

■ Nevertheless, a set number of interpretive and doctrinal positions have emerged from this jumble of results. Every argument raised by Iacampo and the defendants was voiced recently by the Second Circuit in *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2nd Cir.1995). In *Tomka,* the majority held that supervisory employees are not individually liable under Title VII, *id.* at 1313–17, over the impassioned and eloquent dissent of Judge Parker. *Id.* at 1318–24. After *Tomka,* this Court declines to summarize the debate any further; suffice it to say that this writer is persuaded by Judge Parker's dissent, and for the reasons set forth therein, finds that supervisory employees may be individually liable under Title VII and the ADA.

■ The imposition of individual liability on supervisory employees under Title VII and the ADA promotes judicial restraint while providing greater redress for victims of discrimination. Courts ignore their constitutional role when they peer beyond the clear language of a statute in search of ascribed congressional purpose, thus to rewrite the law. As Judge Parker notes, Title VII is unambiguous, and a literal reading of the agent clause does not do such violence to the statutory scheme as to justify inquiry into legislative intent. To ignore the plain language of Title VII (and the ADA) is set forth on uncertain, unmarked and forbidden judicial waters. *See Tomka,* 66 F.3d at 1319; *see also United States v. Flores,* 968 F.2d 1366, 1371 (1st Cir.1992) ("Courts should not lightly read entire clauses out of statutes, but should, to the exact contrary, attempt to give meaning to each word and phrase.") Moreover, threatening supervisory employees with individual liability under Title VII and the ADA deters those who would use their positions and power to discriminate, and guarantees that victims of discrimination will receive redress not only from amorphous corporate entities, but from their very present oppressors.

■ Clearly, Booth, as Iacampo's immediate supervisor, and Godfrin, Booth's supervisor, are Hasbro's agents. Thus, the Court opines that Booth and Godfrin may be found individually liable under Title VII and the ADA.

■ Iacampo also asserts claims against Booth and Godfrin individually under the Rhode Island Fair Employment Practices Act and the Rhode Island Civil Rights Act of 1990. The FEPA is Rhode Island's analog to Title VII, the ADA, and the other Federal anti-discrimination statutes, and like them, it is principally directed at employers. R.I. Gen.Laws § 28–5–7 states, in pertinent part:

**Unlawful employment practices.**—It shall be an unlawful employment practice: (1) For any employer:

(i) To refuse to hire any applicant for employment because of his or her race or color, religion, sex, handicap, age, sexual orientation, or country of ancestral origin, or

(ii) Because of such reasons, to discharge an employee or discriminate against him or her with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment[;] or

\* \* \* \* \* \*

(iv) To refuse to reasonably accommodate an employee's or prospective employee's handicap unless the employer can demonstrate that the accommodation would pose a hardship on the employer's program, enterprise, or business[.]

However, § 28–5–7(6) of the FEPA states that it shall be unlawful:

For any person, whether or not an employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or

coerce the doing of any act declared by this section to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of this chapter or any order issued thereunder, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice[.]

FEPA reaches past employers to forbid discriminatory acts by individual employees. As Iacampo has alleged that Booth and Godfrin were integral participants in the multiple forms of discrimination she suffered, proof of discrimination under any of her theories imposes individual liability on Booth and Godfrin, as abettors or worse.

▉▉▉ Whether individual liability may be imposed under the Rhode Island Civil Rights Act is a more difficult question. R.I. Gen. Laws § 42–112–1 reads, in relevant part:

(a) All persons within the state, regardless of race, color, religion, sex, handicap, age, or country of ancestral origin, shall have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind[.]

(b) For purposes of this section, the right to "make and enforce contracts ..." shall include the making, performance, modification and termination of contracts and rights concerning real or personal property, and the enjoyment of all benefits, terms, and conditions of the contractual and other relationships.

The RICRA grants plaintiffs the right to injunctive and equitable relief, as well as damages and attorneys' fees, but does not say from whom the damages may be sought. R.I. Gen.Laws § 42–112–2.

The Rhode Island Supreme Court has stated that the "Rhode Island Civil Rights Act provides broad protection against all forms of discrimination in all phases of employment." *Ward v. City of Pawtucket Police Dept.*, 639 A.2d 1379, 1381 (R.I.1994); *but see Socha v. National Ass'n of Letter Carriers*, 883 F.Supp. 790, 807 (D.R.I.1995) (reading the RICRA's prohibitions literally). In *Ward,* the Court explained that the RICRA was passed as a reaction to the United States Supreme Court decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), narrowly interpreting 42 U.S.C. § 1981, the Civil Rights Act of 1866. *Ward,* 639 A.2d at 1381. In *Patterson,* the Supreme Court held that 42 U.S.C. § 1981 covered contract formation only (hiring or promotion), and not harassment or discrimination on the job. 491 U.S. at 171–79, 109 S.Ct. at 2369–74. In contrast, the RICRA protects plaintiffs against any discrimination which interferes with the "benefits, terms, and conditions" of the employment relationship—whether it takes the form of disparate impact, disparate treatment, retaliation, or harassment. The decision in *Ward* mandates that courts read the RICRA as broadly as possible—which means that if individuals discriminate in ways that violate the statute, then they must be liable under it. Therefore, the Court concludes that Booth and Godfrin may be held individually liable under the RICRA.

**B. Counts II (in part), III, IV, and VI: Whether Iacampo Has Made Out Prima Facie Claims of Discrimination Under Her Multiple Theories Against Booth and Godfrin [5]**

*1. Count II (in part): Disparate Impact Against Booth and Godfrin*

▉▉▉ Count II of the Complaint presses disparate impact—unwritten practices claims against Hasbro, Booth, and Godfrin. "Dispa-

---

**5.** The RICRA is a comparatively young statute, with no developed case law. Nearly all Rhode Island state-law discrimination cases arise under the FEPA; RICRA claims are new to the field. The Court will therefore set the RICRA aside when considering whether Iacampo's claims merit dismissal or retention at this early stage, with the understanding that if Iacampo ultimately succeeds in proving discrimination under Title VII, the ADA, or the FEPA, she will also have met her burden under the RICRA.

rate impact" discrimination is discrimination wrought by facially neutral employment practices that nonetheless harm and disadvantage distinct, protected classes of people. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971). Recognized as an actionable form of discrimination under Title VII since *Griggs v. Duke Power*, the disparate impact theory has been adopted entire by the ADA. 42 U.S.C. § 12112(b)(3); *see* 1 H.H. Perritt, *Americans With Disabilities Act Handbook* § 5.7 (2d ed.1991); 29 C.F.R. § 1630.1–.10 (EEOC regulations implementing the ADA). As for state law, the Rhode Island Supreme Court has stated that the FEPA "unmistakably forbids individual acts of discrimination as well as patterns of discriminatory practice." *Newport Shipyard v. R.I. Com'n for Human R.*, 484 A.2d 893, 897 (R.I.1984). The Rhode Island Supreme Court has applied the analytical framework developed in federal Title VII cases to the FEPA, its state analog. *Marley v. United Parcel Service, Inc.*, 665 F.Supp. 119, 128 (D.R.I.1987). The elements of a prima facie case of disparate impact are the same under the FEPA and Title VII. *Id.*

■■■■ To make out a prima facie claim of disparate impact discrimination, a plaintiff must (1) "identify the challenged employment practice or policy, and pinpoint the defendant's use of it"; (2) "demonstrate a disparate impact on a group characteristic, such as race, that falls within the protective ambit of Title VII"; and (3) "demonstrate a causal relationship between the identified practice and the disparate impact." *E.E.O.C. v. Steamship Clerks Union, Local 1066*, 48 F.3d 594, 601 (1st Cir.1995) (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650–57, 109 S.Ct. 2115, 2121–25, 104 L.Ed.2d 733 (1989)), *cert. denied,* —— U.S. ——, 116 S.Ct. 65, 133 L.Ed.2d 27 (1995).

■■■■ Count II of the Complaint alleges that Hasbro, Booth, and Godfrin "failed to enforce . . . policies or procedures for compliance with Title VII or the ADA," ¶ 44, and "made subjective personnel decisions . . . without reference to validated, ascertainable standards," ¶ 46, to Iacampo and "others'" detriment. Beyond these thin claims, no facts are alleged that meet the elements set forth in *Steamship Clerks.* The Complaint pays lip service to the requirements of identification, impact, and causation, but ignores the underlying importance of specificity and careful inquiry. *Cf.* Fed.R.Civ.P. 11.

The Court, however, is bound by the strictures of Rule 12(b)(6). Iacampo has touched on the three elements of a prima facie claim of disparate impact discrimination, thus compelling the Court to deny the motion to dismiss. She will have to produce far more concrete evidence if she hopes to survive summary judgment, especially with regards to Booth and Godfrin, but the Court leaves that to another day.

*2. Count III: Disparate Treatment and Sexual Harassment Against Booth*

■■■■ The gravamen of Iacampo's Complaint, set forth in Count III, is that Booth sexually harassed her and discriminated against her on the basis of her gender and disability. Under Title VII (and the FEPA), victims of sexual harassment may proceed under either a *quid pro quo* theory or under a hostile work environment theory. A prima facie claim of *quid pro quo* sexual harassment has five elements. A plaintiff must show that:

(1) [she] is a member of a protected group;
(2) the sexual advances were unwelcome;
(3) the harassment was sexually motivated;
(4) the employee's reaction to the supervisor's advances affected a tangible aspect of her employment; and (5) respondeat superior liability has been established.

*Chamberlin v. 101 Realty, Inc.*, 915 F.2d 777, 783 (1st Cir.1990). To succeed on a claim of hostile work environment sexual harassment, a plaintiff must prove:

(i) that he/she is a member of a protected class; (ii) that he/she was subject to unwelcome sexual harassment; (iii) that the harassment was based upon sex; (iv) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's [employment] and create an abusive [employment] environment; and (v) that some basis for employer liability has been established.

*Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 540 (1st Cir.1995) (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 66–73, 106 S.Ct. 2399, 2405–09, 91 L.Ed.2d 49 (1986)), *cert. denied,* —— U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996). At the very least, Iacampo has made out a claim of *quid pro quo* sexual harassment: she alleges that for two years, Booth entered her cubicle, played with her hair, hugged and rubbed her, and pressed himself against her, even after she complained to Godfrin. Ultimately, the harassment may have exacerbated her multiple sclerosis, and made it impossible for her to work. Complaint at ¶ 26. Count III survives dismissal on these facts alone.

▮ Count III also brings an intentional, or disparate treatment, discrimination claim against Booth. Iacampo alleges that Booth, motivated by her "gender, appearance, disability, or combination of such factors," subjected her to "harsher and stricter treatment than other similarly situated persons[.]" Complaint at ¶¶ 55–56. Absent direct evidence of intentional discrimination, a plaintiff in Iacampo's position must resort to the familiar burden-shifting framework established in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), to prevail in a disparate treatment suit brought under Title VII, the ADA, and the FEPA. To establish a prima facie claim under *McDonnell Douglas* and its progeny, Iacampo must show that (1) she is a member of a protected class; (2) her job performance has been satisfactory; but (3) Booth took some adverse employment action against her while (4) having other, comparably qualified employees perform her duties. *Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 421 (1st Cir.1996); *see also Resare v. Raytheon Co.,* 981 F.2d 32, 39–44 (1st Cir.1992) (applying Title VII "mixed-motive" and "pretext" theories of disparate treatment discrimination to the FEPA).[6]

---

6. For brevity's sake, the Court will not set forth the remainder of the *McDonnell Douglas* burden-shifting framework. The parties are directed to *Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413,

▮ Sexual harassment is itself a form of disparate treatment, and the Court does not question Iacampo's allegations that she was subjected to different, and worse, treatment by Booth on the basis of her gender. However, the Court finds few facts in the Complaint that sustain a disparate treatment claim under the ADA. Iacampo's multiple sclerosis places her in a protected class; however, apart from Booth's telling her that she "would be in a wheelchair," Complaint at ¶ 24, only generalities support the inference that Booth discriminated against Iacampo on the basis of her *disability.* If anything, Iacampo's multiple sclerosis worsened a terrible situation, but may not have been tied to its cause. Nevertheless, the Court accepts Iacampo's allegations, and lets the ADA claims stand.

### 3. Count IV: Retaliation Against Booth

▮ Retaliation against an employee who has opposed, or participated in the investigation of, a discriminatory practice is expressly forbidden under Title VII, 42 U.S.C. § 2000e–3(a), the ADA, 42 U.S.C. § 12203(a)–(c), and the FEPA. R.I. Gen. Laws § 28–5–7(5). Still, the burden remains with the plaintiff to show that "the employer took a materially adverse employment action against him." *Blackie v. State of Maine,* 75 F.3d 716, 725 (1st Cir.1996) (considering a retaliation case under the FLSA). More specifically, the First Circuit has stated:

> Typically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities[,] or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service.

*Blackie,* 75 F.3d at 725 (citations omitted).

▮ Iacampo alleges that after she complained to Godfrin and requested a transfer,

---

420–422 (1st Cir.1996) for a summary of Title VII disparate treatment jurisprudence in this Circuit.

Booth was "abusive and hostile" and told her she would never be moved. Complaint at ¶ 18. His behavior toward her worsened, with the harassment and adverse scrutiny escalating. Complaint at ¶ 20. Whether these harms rise to the level of "materially adverse employment actions" is a question left for the conclusion of discovery; however, the inferences of retaliation are strong enough for the Court to find that Iacampo has made out a prima facie claim under Title VII and the FEPA.

 Retaliation under the ADA is less certain—while Iacampo has, once again, suggested that her disability stimulated Booth's actions, her conversation with Godfrin appears to have been motivated by Booth's groping, not by any disability-based discrimination. Recall that retaliation claims arise out of opposition to the sins forbidden *by each statute;* unless Iacampo can demonstrate that she complained to Godfrin about discrimination related to her multiple sclerosis, her ADA retaliation claim will dissolve. Nevertheless, the Court must err on the side of inclusion at this stage and that claim will remain in the case for now.

### 4. Count VI: Discrimination Against Godfrin

 The facts, as alleged, demonstrate that Godfrin listened to Iacampo's complaints, told her that he had to be fair to Booth, made a hapless and unsuccessful attempt to arrange a transfer, and reported Iacampo's visit to Booth. Complaint at ¶¶ 15–19. Only by the most generous inferences can the Court find that this scenario supports Count VI's disparate treatment claims under Title VII, the ADA, and the FEPA. Applying the elements set forth in section III.B.2, *supra,* the Court notes that to survive summary judgment, Iacampo will have show that (1) she belongs to one or more protected classes; (2) her job performance was satisfactory; but (3) Godfrin refused to transfer her, or shield her from harassment, while (4) regularly protecting

comparable male and/or non-disabled employees and transferring them upon request. Currently, none of Godfrin's actions suggest discriminatory motive or pretext on his part; at this point, Count VI stands by the procedural graces of Rule 12(b)(6). In short, the Court cannot state conclusively that Godfrin acted without discriminatory animus and thus Count VI remains in the case.

### C. Count V: Booth's Liability Under R.I. Gen.Laws § 9–1–2 (1985)

 Count V of Iacampo's complaint seeks to impose civil liability on Booth for criminal offenses he allegedly committed while sexually harassing her. In relevant part, R.I. Gen. Laws § 9–1–2 (1985) states:

> **Civil liability for crimes and offenses.—** Whenever any person shall suffer any injury to his person, reputation or estate, by reason of the commission of any crime or offense, he may recover his damages for such injury in a civil action against the offender, and it shall not be any defense to such action that no criminal complaint for such crime or offense has been made[.]

To quote the Rhode Island Supreme Court, "Section 9–1–2 creates a new right of action in that a victim can bring an action for damages for injuries even if no criminal complaint has been filed." *Lyons v. Town of Scituate,* 554 A.2d 1034, 1036 (R.I.1989). Count V alleges that Booth committed simple assault, second degree sexual assault, and extortion between May 1992 and May 1994, and seeks damages under § 9–1–2.

Booth seeks dismissal of Count V on the grounds that the facts, as alleged, fail to establish the requisite elements of the aforementioned crimes, therefore removing any basis for civil liability. The Court disagrees, and concludes that Iacampo has alleged the elements of simple assault and/or battery and second degree sexual assault.[7] Count V thus survives dismissal under Rule 12(b)(6).

 R.I. Gen.Laws § 11–5–3 (1994) proscribes the commission of simple assault or battery upon a person. While assault and

---

7. At oral argument, counsel for Iacampo told the Court that she will not press her extortion claim. As Count V goes forward on the backs of the other offenses, that information has no bearing

on the outcome of the present 12(b)(6) motion. However, the Court takes Iacampo's counsel at his word, and considers the extortion allegations to be gone from the case.

battery are often treated as a single offense—largely because they tend to occur together—they are, in fact, two different crimes, each with its own elements. "An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in reasonable fear of imminent bodily harm.... Battery refers to an act that was intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *Proffitt v. Ricci*, 463 A.2d 514, 517 (R.I.1983); *see State v. McLaughlin*, 621 A.2d 170, 177 (R.I.1993), *cert. denied*, 510 U.S. 858, 114 S.Ct. 168, 126 L.Ed.2d 128 (1993); *State v. Messa*, 594 A.2d 882, 884 (R.I.1991).

■ Iacampo alleges that Booth used physical force "to threaten or intimidate" her by "touching or threatening to touch" her, "despite [her] objections and resistance," and that she was placed in fear of Booth and his actions. Complaint at ¶ 70. Her allegations are sufficient to make out a prima facie claim of simple assault—Booth used physical force, or the threat thereof, to instill a fear of imminent bodily harm in Iacampo.[8]

■ As for simple battery, Iacampo maintains that Booth used physical force "to rub his genital area against" her, despite her "objections and resistance[.]" Complaint at ¶ 69. It is clear from the Complaint that the touching was deeply offensive and unconsented to, a hornbook example of battery. Thus Iacampo has alleged the requisite elements of simple assault and/or battery under R.I. Gen.Laws § 11–5–3.

■ Iacampo also seeks damages under § 9–1–2 arising out of Booth's alleged commission of second degree sexual assault upon her. R.I. Gen.Laws § 11–37–4(2) (1994) states:

**Definition of guilt of second degree sexual assault.** A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if[:] (2) The accused uses force or coercion.

The applicable definition of "force or coercion" is found at R.I. Gen.Laws 11–37–1(2)(B) (1994): The assailant uses force or coercion when he "[o]vercomes the victim through the application of physical force or physical violence." The Rhode Island Supreme Court further defined § 11–37–1(2)(B) in *State v. Goodreau*, 560 A.2d 318 (R.I.1989). Noting that a conviction for first degree sexual assault—which addresses sexual penetration, rather than contact, *see* R.I. Gen. Laws § 11–37–2 (1994)—requires proof that the accused used "force beyond that necessary to commit the sexual assault," *Goodreau*, 560 A.2d at 322, the Court stated that:

> In order to meet this standard, the prosecution must merely show that the victim did not consent to the act. If the victim resisted the act, then the defendant has used force beyond that necessary to commit the sexual assault.... The victim is only required to "offer such resistance as seems reasonable under all the circumstances." *State v. Carvalho*, 409 A.2d 132, 135–36 (R.I.1979).

*Id.* at 322–23. The Court then applied the same standard of proof to the "force or coercion" prong of second degree sexual assault, *id.* at 323, establishing the rule that the victim's reasonable resistance under the circumstances furnishes proof that no consent was given and that force or coercion within the meaning of § 11–37–1(2)(B) was applied.

In *Goodreau*, the defendant teacher had touched and grabbed the breasts and buttocks of a student on three different occasions while in school. 560 A.2d at 320. The Rhode Island Supreme Court ruled that when the student pulled away and voiced displeasure at Goodreau's actions, her resistance was reasonable under the circumstances and that "[i]n these circumstances we

---

8. Booth urges the Court to read the definition of "force or coercion" set forth in R.I. Gen.Laws § 11–37–1(2)(A)–(D) into § 11–5–3. Section 11–37–1(2)(A)–(D) governs the force element of sexual assault prosecutions; the Rhode Island Supreme Court has not looked to that section when grappling with simple assault or battery cases, preferring a common-sense approach to whether force was involved. *See McLaughlin*, 621 A.2d at 177 (R.I.1993) (jury could infer that assault and/or battery occurred when defendant admitted hitting victim on the head). Therefore, the Court declines to complicate one statute by lifting a definitional section from another.

find that there was sufficient evidence of force" to warrant submission of second-degree sexual-assault charges to the jury. *Id.* at 323.

Booth contends that Iacampo has not pled that he used forced beyond that necessary to complete the assault, or that she offered reasonable resistance. Thus Iacampo has not succeeded in making out a prima facie case for civil liability arising out of second degree sexual assault. The Court disagrees; the scenario presented by Iacampo's Complaint parallels the facts in *Goodreau.* Allegedly, Booth played with Iacampo's hair, hugged her from behind, rubbed her, and pressed his genitals against her for his sexual gratification. Complaint at ¶ 14. Iacampo has alleged that she objected and resisted, Complaint at ¶ 69, and that she informed Godfrin of Booth's actions and Booth knew about it. Complaint at ¶¶ 15–18. Drawing all inferences in favor of Iacampo, the Court finds that Iacampo has alleged that there was sexual contact and she resisted (both in person and within company channels), and furthermore, that her resistance appears reasonable for a disabled woman harassed by a male supervisor. Booth's persistence despite Iacampo's resistance creates the inference that force was applied. Therefore, the Court finds that Iacampo has alleged all the elements of second degree sexual assault, and that she has made out a prima facie claim for liability under R.I. Gen.Laws § 9–1–2 on that basis.

**D. Count IX (in part): Whether Iacampo May Assert Common Law Claims as a Third Party Beneficiary of Contracts Between Hasbro and the United States and Rhode Island Governments**

Count IX of the Complaint, entitled "State Constitutional and Other Contract Claims," is a grab-bag of claims, all born of antidiscriminatory obligations allegedly assumed by Hasbro while conducting business with the United States and Rhode Island govern-

ments.[9] Most are constitutional or statutory; however, paragraph 98 reads:

> Plaintiff is a member of a class of persons who are or were the intended or foreseeable third-party beneficiaries of certain contracts or agreements between Defendant Hasbro and agencies of the United States Government, the Army and Air Force Exchange Services, the governments of the State of Rhode Island or of other States or of political subdivisions thereof, or of certain institutions, under which Defendant Hasbro agreed not to discriminate against persons on the basis of gender, disability, or other prohibited reason, to provide equal employment opportunity, to comply with the Constitution and laws of the United States, and to take affirmative action to ensure equal employment opportunity to members of protected classes, including those which had been victims of prior discrimination.

Paragraph 99 alleges that the defendants' conduct "breached such agreements as described in Paragraph 98 and deprived Plaintiff of rights, benefits, and protections of which she was an intended or foreseeable beneficiary."

Hasbro and the other defendants move for dismissal of Count IX's contract claims on two grounds: first, that the administrative remedies provision of § 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, preempts common-law claims arising out of federal contracts,[10] and second, that Iacampo has failed to demonstrate that she was the intended beneficiary of any state contracts. The Court will deal with each argument in turn.

**1. Section 503 Preemption and Hasbro's Federal Contracts**

 At the outset, the Court points out that Hasbro's § 503 preemption argument applies *only* to contract claims spawned by

---

**9.** Again, Hasbro denies that any state contracts were ever struck. *See supra* note 4. Still, the Court must accept Iacampo's allegations as true.

**10.** Iacampo's counsel states that "[Iacampo] is charging that Hasbro breached its anti-discrimination obligations in contracts with the State of Rhode Island, not the federal government[.]" *Pl.*

*Mem. of Law in Support of Her Opposition to Defendants' Motion to Dismiss* at 17. Therefore, § 503 preemption should not be an issue. But counsel misreads Iacampo's Complaint—part of her breach-of-contract claim does rest on federal contracts—and the issue must be dealt with.

alleged disability-based discrimination. Gender discrimination is untouched by the Rehabilitation Act, which provides administrative remedies for handicapped individuals who suffer discrimination at the hands of federal contractors.[11] Hasbro, an admitted federal contractor, argues that § 503's administrative remedies are the exclusive avenue of redress for Iacampo, who claims to have been discriminated against because she suffers from multiple sclerosis.

The First Circuit defined the scope of § 503 preemption in *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270 (1st Cir.1993), *cert. denied*, 508 U.S. 981, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993). Undertaking a thorough implied-preemption analysis, the Court explored the legislative history of the Rehabilitation Act and found "no 'clear and manifest' intent on the part of Congress to preempt state handicap discrimination claims against federal contractors. Indeed, we find no signals of such intent." *Id.* at 1278 (footnote omitted). The First Circuit reached the same conclusion as to Ellenwood's common-law contract claims. *Id.* Thus, in *Ellenwood*, the First Circuit held that § 503 of the Rehabilitation Act does not preempt state statutory or common-law claims brought on the basis of disability discrimination by federal contractors. More specifically, § 503 does not bar Iacampo's disability-discrimination claims against Hasbro and the other defendants under the FEPA, the RICRA, and the common law.

Still, every rule must have its exception, and the First Circuit crafted its own. In *Howard v. Uniroyal, Inc.*, 719 F.2d 1552 (11th Cir.1983), the Eleventh Circuit held that § 503 preempted a third-party beneficiary action brought on the basis of a § 503-mandated affirmative action clause contained in contracts between Uniroyal and the federal government. *Id.* at 1555. The Eleventh Circuit reasoned that the "detail and precision" of the remedial scheme created by Congress "makes it reasonable to infer that Congress left no room in section 503(b) for state contract actions to supplement it." *Id.* at 1559. In *Ellenwood*, the First Circuit read *Howard* narrowly, but nonetheless recognized that its holding would apply if a contract action is brought solely to vindicate § 503 rights. "[A] state contract claim based on a breach of [a] manual provision [describing employee rights under the Rehabilitation Act] arguably would be preempted by the federal law.... Such a claim, though in the guise of a contract claim based on the manual, would seem no different from one asserting a breach of § 503. A direct claim under § 503 unquestionably would be preempted for the reasons set out in *Howard*." *Ellenwood*, 984 F.2d at 1278 (citations omitted); *see Martin Marietta Corp. v. Maryland Comm. on Human Relations*, 38 F.3d 1392, 1403–1404 (4th Cir.1994) (analyzing the relationship between *Ellenwood* and *Howard*).

■ All of which leaves the Court in a quandary. Paragraph 98 of the Complaint baldly alleges that "Defendant Hasbro agreed not to discriminate against persons on the basis of ... disability" in its contracts with the United States government and its agencies. Accepting Iacampo's statement as true, the Court is nonetheless deprived of contractual language specific enough to determine the applicability of *Ellenwood* and *Howard*. If Hasbro's federal agreements contain provisions setting forth contractual duties towards the disabled that are greater than, or different from, the boilerplate language required by § 503 of the Rehabilitation Act, then *Ellenwood* non-preemption applies and Iacampo's contract claims go forward. (Subject, of course, to the doctrines governing the assertion of third-party beneficiary claims.) However, if

---

**11.** 29 U.S.C. § 793 reads, in pertinent part: "(a) Any contract in excess of $2,500 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services ... for the United States shall contain a provision requiring that, in employing persons to carry out such contract the party contracting with the United States shall take affirmative action to employ and advance in employment qualified handicapped individuals as defined in section 706(7) of this title.... (b) If any handicapped individual believes any contractor has failed or refuses to comply with the provisions of his contract with the United States, such individual may file a complaint with the Department of Labor. The Department shall promptly investigate such complaint and shall take such action thereon as the facts and circumstances warrant, consistent with the terms of such contract and the laws and regulations applicable thereto."

the *only* source of Iacampo's federal breach-of-contract claims is language detailing § 503 rights and remedies, then she is attempting to masquerade a § 503 action as a suit in contract. In that case, the *Howard* exception to *Ellenwood* applies, § 503 of the Rehabilitation Act preempts, and Iacampo's third-party beneficiary claims, rooted in alleged disability-based discrimination, must be dismissed.

The Court simply cannot apply law to conjecture. Caught between rule and exception, the devil and the sea, the Court must err on the side of Iacampo. Artful pleading can lift a claim over the Rule 12(b)(6) hurdle; it may have done so here. But the chance that Hasbro has assumed obligations to the disabled greater than, or apart from, those required by the Rehabilitation Act forces the Court to deny the defendants' Rule 12(b)(6) motion as to Iacampo's third-party beneficiary claims arising out of Hasbro's federal contracts. This issue may be revisited at the summary judgment stage, but for now, the claims survive.

### 2. Iacampo As Third–Party Beneficiary of Hasbro's Alleged Rhode Island Contracts

Within the tight confines of ¶¶ 98–99 of the Complaint, Iacampo also brings third-party beneficiary claims on the basis of anti-discrimination provisions allegedly inscribed in contracts between Hasbro and the State of Rhode Island. (Simply put, she is replicating her Federal contract claims.) To which the defendants respond that under no set of circumstances can Iacampo demonstrate that she was an intended beneficiary of any contracts entered into by Hasbro; thus, they seek dismissal of Iacampo's common-law contract claims.

Under Rhode Island law, "[w]hen one party for valuable consideration, engages another by contract to do some act for the benefit of a third party, the latter who would enjoy the benefits, may maintain an action for breach of contract. If the third party is an intended beneficiary, the law implies privity of contract." *Davis v. New England Pest Control Co.*, 576 A.2d 1240, 1242 (R.I.1990) (citations omitted). Only intended—and not incidental—third-party beneficiaries can bring suit for damages flowing from a breach of contract between two other parties. *Forcier v. Cardello*, 173 B.R. 973, 984 (D.R.I. 1994). In the present case, mere profit to Iacampo is not enough to confer the status of an intended beneficiary—Hasbro and Rhode Island must have forcefully, overtly intended to benefit her. *Id.* at 985; *see also Restatement (Second) of Contracts* § 302 comment e (1981) ("*Incidental beneficiaries.* Performance of a contract will often benefit a third person. But unless the third person is an intended beneficiary[,] no duty to him is created.").

Moreover, the fact that Iacampo bases her claims on government contracts elevates the level of scrutiny the Court will apply when determining the parties' intentions. Iacampo must show that the State of Rhode Island specifically had her in mind (or, at the very least, her class) when it bargained with Hasbro, and that the contractual language reflects the State's narrowly beneficent intentions. To quote *Restatement* § 313(2):

[A] promisor who contracts with a government or governmental agency to do an act for or render a service to the public is not subject to contractual liability to a member of the public for consequential damages resulting from performance or failure to perform unless

(a) the terms of the promise provide for such liability; or

(b) the promisee is subject to liability to the member of the public for the damages and a direct action against the promisor is consistent with the terms of the contract and with the policy of the law authorizing the contract and prescribing remedies for its breach.

The *Restatement* later comments that "[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* at comment a.

To manifest the existence of this "different intention," Iacampo first cites R.I. Const. art. I, § 2 (prohibiting discrimination by entities doing business with the state) and the RICRA (prohibiting discrimination in the making and performance of contracts) as the

sources of alleged contractual provisions similar to those mandated by the Rehabilitation Act. Iacampo argues that art. I, § 2 and the RICRA are express or implied terms of Hasbro's state contracts. By seeking government work, and by agreeing to this contractual language, Hasbro showed an express intention to benefit Iacampo. In turn, contractual benefits flowed directly to Iacampo in the form of salary derived from state payments. Thus, she was a third-party beneficiary of Hasbro's agreements with the State of Rhode Island by virtue of contractual provisions, Hasbro's intent, and direct gain.

 Once again, the Court is reluctant to address the merits of Iacampo's argument without reading a contract. If Iacampo is to prevail on her contract claims, she will have to make a heightened showing of the State's intent; Rhode Island wishes all its citizens well, but contracts on behalf of the few. As it is, the Court suspects that ¶¶ 98–99 of the Complaint, which refer to Iacampo as "a member of a class of persons," and Iacampo's citations of the Rhode Island Constitution and the RICRA are an attempt to duplicate her FEPA and RICRA disparate impact claims in contract. Nevertheless, mindful of the procedural constraints of Rule 12(b)(6), the Court accepts Iacampo's allegations as true, and refuses to dismiss her third-party beneficiary claims. It is possible that Hasbro has signed agreements of which Iacampo is an intended beneficiary. If not, the Court will revisit the issue at the appropriate stage.

**E. Counts X and XI: Whether Iacampo's Claims for Intentional and Negligent Infliction of Emotional Distress Are Barred by the Rhode Island Workers' Compensation Act**

Counts X and XI of the Complaint allege, respectively, that Booth, and through him

Godfrin and Hasbro, are liable to Iacampo for intentional and negligent infliction of emotional distress. The defendants contend that the exclusive remedy provision of the Rhode Island Workers' Compensation Act, R.I. Gen.Laws § 28–29–1 to –37–31 (1986) ("WCA"), bars Iacampo's claims, which arise out of workplace torts.[12]

 The Court will address Counts X and XI in reverse order. Iacampo's claim for negligent infliction of emotional distress faces summary dismissal, so the Court will avoid unnecessary comment on whether that tort is affected by the WCA. Under Rhode Island law, the tort of negligent infliction of emotional distress—commonly referred to as bystander liability—provides relief to persons vicariously injured after witnessing the wrongful suffering of a loved one. To recover, "a party must (1) be a close relative of the victim, (2) be present at the scene of the accident and be aware that the victim is being injured, and (3) as a result of experiencing the accident, suffer serious emotional injury that is accompanied by physical symptomatology." *Marchetti v. Parsons*, 638 A.2d 1047, 1052 (R.I.1994). Iacampo has alleged that her emotional distress resulted from injuries *to her;* the Court can draw no inferences from the Complaint which would support a claim of bystander liability. Count XI is dismissed for failure to state a claim.

 Turning to Count X, the Court concludes that the Rhode Island Workers' Compensation Act provides the sole avenue of redress for employees who have suffered intentional infliction of emotional distress as a result of workplace sexual harassment and other discrimination.[13] The scope and breadth of the WCA is not to be underesti-

12. Iacampo's counsel musters a very confusing response. Arguing that Iacampo brings her intentional infliction of emotional distress claims "under Title VII and the ADA," he undertakes a Federal preemption analysis in order to show that any Workers' Compensation remedies must give way to the remedies established by Congress. *Memorandum in Opposition* at 21–22. But the Complaint states explicitly that Counts X and XI are brought "pursuant to state law." Complaint at ¶¶ 110 & 117. Counts X and XI

allege common law torts; Federal preemption is a non-issue. Similarly, counsel's concession that preemption analysis does not shield Iacampo's negligent infliction of emotional distress claims, *Memorandum in Opposition* at n. 11, is beside the point.

13. Under Rhode Island law, the tort of intentional infliction of emotional distress has four elements: "(1) the conduct must be intentional or in reckless disregard of the probability of causing

mated; the Act establishes a statutory scheme whereby a employee will be provided with swift, though limited, relief for all injuries suffered on the job. "However, the right to no-fault compensation from one's employer is afforded in lieu of all other rights and remedies that an injured employee might have[.]" *DiQuinzio v. Panciera Lease Co., Inc.,* 612 A.2d 40, 42 (R.I.1992). The exclusive remedy provision of the WCA, R.I. Gen. Laws § 28–29–20 (1986), states in relevant part:

> **Rights in lieu of other rights and remedies.**—The right to compensation for an injury under chapters 29–38, inclusive, of this title, and the remedy therefor granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents or employees[.]

The employee is rescued from the vagaries and reverses of litigation, although she loses the right to potentially higher damage awards; the employer surrenders all defenses, but need not fear hefty judgments.

▮ Intentional infliction of emotional distress is a tort like any other, and it is clearly compensable under the WCA. In *Cianci v. Nationwide Ins. Co.,* 659 A.2d 662 (R.I.1995), the Rhode Island Supreme Court stated that "there is no intentional tort exception to the exclusivity provisions of the act." *Id.* at 670; *see also Lopes v. G.T.E. Products Corp.,* 560 A.2d 949, 951 (R.I.1989) (same); *Coakley v. Aetna Bridge Co.,* 572 A.2d 295, 296 (R.I.1990) (same). Responding to questions certified to it by a fellow judge of this Court, the Rhode Island Supreme Court held that the WCA's exclusivity provisions applied to a suit between an employee and his employer's workers' compensation carrier in which the employee sought damages for, *inter alia,* intentional infliction of emotional distress. *Cianci,* 659 A.2d at 667–70. However procedurally tortuous, the Court's holding can be distilled to the simple proposition that the WCA provides the exclusive remedy for claims against employers by

employees who have suffered intentional infliction of emotional distress in the workplace. *See also Censullo v. Brenka Video, Inc.,* 989 F.2d 40, 43–44 (1st Cir.1993) (New Hampshire workers' compensation statute bars intentional infliction of emotional distress claims against employer).

▮ To defeat dismissal of Count X, Iacampo must show either that she is not subject to the WCA, or that the emotional distress she suffered was unrelated to the workplace. The Court finds that she can do neither. Unless otherwise proven, an employee is presumed to be under the aegis of the WCA. The Rhode Island Supreme Court has held repeatedly that "if an employee has not properly reserved his or her common-law rights under the act, he or she is barred from bringing a tort action against his or her employer if workers' compensation benefits are appropriate." *Cianci v. Nationwide Ins. Co.,* 659 A.2d at 668 (italics omitted); *Lopes,* 560 A.2d at 950; *Hornsby v. Southland Corp.,* 487 A.2d 1069, 1071 (R.I. 1985). Iacampo has not alleged that she elected to preserve her common-law rights pursuant to R.I. Gen.Laws § 28–29–17; in the absence of any evidence, the Court must assume that Iacampo is subject to § 28–29–20.

▮ To be compensable under the WCA, an injury must "[arise] out of and in the course of" the plaintiff's employment, R.I. Gen.Laws § 28–33–1, a statutory requirement that the Rhode Island Supreme Court has refined into a "nexus" or "causal relationship" test. *Martone v. State of Rhode Island/Registry of Motor Vehicles,* 611 A.2d 384, 386 (R.I.1992). The plaintiff must show that she was working for the employer at the time of injury, and that the injury occurred at a place where she might reasonably be and while she was engaged in her duties or activities incidental thereto. *Id.* Iacampo has alleged that the sexual harassment and discrimination she suffered at the hands of the defendants took place at

emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress and (4) the emotional dis-

tress in question must be severe." *Showalter v. Allison Reed Group, Inc.,* 767 F.Supp. 1205, 1207 n. 1 (D.R.I.1991) (quoting *Champlin v. Washington Trust Co.,* 478 A.2d 985, 989 (R.I.1984)).

work, while she was serving as a collection analyst. As it is these activities that underlie her claims of intentional infliction of emotional distress, the Court concludes that she has established a causal relationship between her injuries and her employment.

Thus, § 28–29–20 of the WCA shields Hasbro from suit by Iacampo on an intentional infliction of emotional distress claim arising out of workplace sexual harassment and discrimination. Furthermore, Booth and Godfrin, as "officers, agents or employees" of Hasbro, are expressly immunized by § 28–29–20 from liability to Iacampo for her injuries. "Workers' compensation benefits are meant as full compensation for any loss or harm that is alleged to have been caused by any entity to which immunity from suit is extended[.]" *DiQuinzio,* 612 A.2d at 42; *Boucher v. McGovern,* 639 A.2d 1369, 1374–75 (R.I.1994) (exclusivity provisions of § 28–29–20 extinguish all other recovery rights). Iacampo's claims for intentional infliction of emotional distress against Hasbro, Booth, and Godfrin, therefore, must be dismissed.

### F. The Defendants' Rule 12(e) Motion

As the foregoing demonstrates, Iacampo's Complaint is not so opalescent and confusing as to prevent the framing of a suitable response. The defendants' Rule 12(e) motion is summarily denied.

### IV. Conclusion

For the foregoing reasons, the defendants' Rule 12(b)(6) motion is denied as to Counts III, IV, V, VI, and IX (in part) and granted as to Counts X and XI. The defendants' Rule 12(e) motion is denied.

It is so ordered.