Salvatore **MARTONE**

v.

**STATE OF RHODE ISLAND/REGISTRY OF MOTOR VEHICLES.**

**No. 91–599–M.P.**

Supreme Court of Rhode Island.

June 29, 1992.

Jack R. DeGiovani, Jr. and Stephen Rappoport, Rappoport, Audette, Bazar, Farley, East Providence, for plaintiff.

William F. Buckley, State Employees Workers Compensation, for defendant.

## OPINION

SHEA, Justice.

In this case the petitioner, State of Rhode Island, Registry of Motor Vehicles (the state), has petitioned the Supreme Court by writ of certiorari to request a review of a final decree of the Appellate Division of the Workers' Compensation Court. In that decree the Appellate Division reversed the decree of the trial judge who had denied workers' compensation benefits to the employee. We quash the decree of the Appellate Division and remand the case to the Workers' Compensation Court for entry of a final decree affirming the trial judge.

The events giving rise to this litigation began in the early evening of May 19, 1983, at the Registry of Motor Vehicles, Division of the Rhode Island Department of Transportation. The petitioner below, Salvatore Martone (employee or Martone), was working his regular shift as a teletype operator. A nineteen-year-old female clerk was working overtime in the same facility in the computer room. The female clerk reported the following. As she was talking with Steve Waldman (Waldman), a coworker, employee entered the room carrying a Dunkin' Donuts bag. The employee asked Waldman who the "pretty girl" was. Waldman told employee her name. The employee then approached the young woman, who was wearing a knee-length dress. The employee asked her about her legs and then reached under the counter where she was sitting and pulled her dress up a few inches. He then grabbed her hair and told her she needed a haircut. Finally employee made a comment about sucking the young woman's ears. Waldman left the room at that point, and employee followed. The employee returned, however, about one hour later and asked the female clerk how old she was and if she was tender in bed. She then told employee to leave her alone.

The following day the female clerk reported this incident to her superior. The proper supervisors were informed of the incident and after an investigation employee was dismissed on leave without pay and later his employment with the state was terminated.

As a result of the termination of his job, employee filed a grievance. The case was heard before an arbitrator of the American Arbitration Association on September 24, 1984. The arbitrator, while not accepting as true all the allegations made by the clerk, did find that "Martone's behavior was offensive and constituted a form of sexual harassment." Nevertheless, the arbitrator determined discharge to be too harsh a penalty and ordered that employee's penalty be a one-week suspension.[1]

---

1. Although the decision of the arbitrator is not before us on this appeal, we are compelled by our responsibility for the administration of justice to comment on the award. We are not of the opinion that termination of employment is too harsh a penalty for a person who has subjected a fellow employee to the type of treatment involved here, which would be highly offensive in any situation and is utterly unacceptable in an employment situation. Although we agree that we must ensure that the punishment for a work-related offense is proportionate to the offense committed, we are of the opinion that sexual harassment is a degrading experience for the victim and is a serious offense that should be punished by a severe sanction.

After serving the suspension, employee returned to work in November 1984. He believed that the other workers in the office treated him differently from the way they had treated him before the suspension. The employee said the other workers were unfriendly to him and that this work situation was stressful to him. After only three weeks of work, employee filed a petition seeking workers' compensation benefits, alleging that he was suffering from stress, anxiety, and depression.

Martone began treating with Dr. John Strom, a neurologist, in January of 1983. Doctor Strom treated Martone for a seizure disorder by prescribing medication. It should be noted that the seizure disorder predated the incident of sexual harassment. The employee again treated with Dr. Strom in July of 1983, a few months after the sexual harassment incident. The employee complained that he was having trouble functioning at work, that he was forgetful, and that he was frustrated. The employee also told the doctor that he had taken a leave of absence from work. Later, in December of 1984, employee finally admitted to Dr. Strom that he had been fired from his job owing to charges of sexual harassment. Doctor Strom offered no opinion about whether employee was able to continue working.

The employee also treated with Dr. John Ruggiano, a psychiatrist, beginning in March of 1985. The employee told the doctor that he had been wrongly accused of sexual harassment and had been out of work for over one year. He also told the doctor that he had been exonerated on the charges of sexual harassment and had returned to work but that upon his return he found the work conditions changed and unbearable. The doctor determined that the false accusation and the change in work conditions caused Martone to be depressed, which rendered him unable to work.

The employee argues in this appeal that the change in his work environment after his suspension triggered the stress from which he allegedly now suffers. Essentially he asserts that the treatment by his coworkers after his termination caused his "psychic injury" and the resulting disability. The employee further asserts that his injury did not occur as a result of any intentional or willful act on his own part. Rather, he contends, his injury is work related.

The sole issue before us is whether the stress that employee claims he experienced as a result of his coworkers' treatment of him after it was determined that he sexually harassed another coworker is a work-related condition that entitles employee to benefits under the Workers' Compensation Act. We are of the opinion that it is not a compensable work-related condition.

General Laws 1956 (1986 Reenactment) § 28–33–1 provides in part as follows: "If an employee * * * receives a personal injury arising out of and in the course of his employment, connected therewith and referable thereto, he shall be paid compensation, as hereinafter provided * * * ." This court has had many opportunities to construe this statute.

In *Bottomley v. Kaiser Aluminum & Chemical Corp.*, 441 A.2d 553 (R.I.1982) this court stated that

"it [is] well settled that an employee's injury is compensable if the particular facts and circumstances presented establish a 'nexus' or a 'causal relationship' between the injury and the employment. * * * To establish such nexus or causal relationship, the employee must show that his injury occurred within the period of his employment, at a place where he might reasonably have been, and while either fulfilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed." *Id.* at 554.

A widely respected authority on workers' compensation is in accord with this explanation. That writer has stated:

"A compensable injury must arise not only within the time and space limits of the employment, but also in the course of an activity related to the employment. An activity is related to the employment if it carries out the employer's purposes or advances his interests directly or indi-

rectly. Under the modern trend of decisions, even if the activity cannot be said in any sense to advance the employer's interest, it may still be in the course of employment if, in view of the nature of the employment environment, the characteristics of human nature, and the customs or practices of the particular employment, the activity is in fact an inherent part of the conditions of that employment." 1A *Larson The Law of Workmen's Compensation* ch. 5, § 20 (1985).

■ This court has also determined that in certain situations, an employee's deviation from duties in the scope of employment does not in and of itself destroy the causal nexus. In *Lomba v. Providence Gravure, Inc.*, 465 A.2d 186, 189 (R.I.1983), this court stated that such deviation "must be substantially motivated by influences that originated in the employment."

Finally this court has discussed the viability of granting workers' compensation to victims' of "psychic disorders" in *Seitz v. L & R Industries, Inc.*, 437 A.2d 1345 (R.I. 1981). In *Seitz* the employee, Beulah Seitz, was the secretary to the vice president of a company that operated in Worcester, Massachusetts. The company was sold to L & R Industries, which decided to move the operation to Smithfield, Rhode Island. The first day of work following the move was, of course, quite hectic. The employee was required to perform many other activities other than her normal tasks, including janitorial and other cleaning work. In addition, the employee's authority as office manager was not recognized by all of her new fellow employees or associates. The employee became upset with this situation, so she terminated her employment. The employee entered treatment with a psychiatrist, who determined that she had "obsessive compulsive personality disorder" brought on by emotional trauma. *Id.* at 1346. Relying on these facts, this court denied the employee's claim for workers' compensation benefits. *Id.* at 1352.

The *Seitz* court reviewed the policies of other states before expressing reluctance to accept the notion that benefits could be awarded for a psychic injury that had nei-ther a physical cause nor a physical manifestation. *Id.* at 1347–51. The court noted that "it is a rare situation in which some adverse interpersonal relations among employees are not encountered from time to time." *Id.* at 1349. The court concluded that the employee's work situation "did not exceed the intensity of stimuli encountered by thousands of other employees * * *. If psychic injury is to be compensable, a more dramatically stressful stimulus must be established." *Id.* at 1351.

■ Applying these rules to the present case leads to the conclusion that employee's claim for workers' compensation benefits should be denied. First, employee did not present any competent medical testimony that his alleged injury was work related. Doctor Strom did not offer an opinion concerning whether Martone's alleged medical problems were related to his work. Moreover, Dr. Ruggiano's determination that Martone's medical problems were work related was based on the false premise that Martone had been unjustly accused of sexual harassment and had been exonerated. As we have previously stated, the arbitrator found sufficient evidence to support the claim of sexual harassment. Although the arbitrator certainly did drastically reduce Martone's punishment, he did not by any means exonerate Martone of wrongdoing. Since Dr. Ruggiano's opinion was based on a premise that was found to be untrue, we reject his opinion because it is not competent evidence.

Second, employee cannot establish the requisite "nexus" or "causal relationship" between the injury and employment. The employee cannot demonstrate that his alleged injury occurred while he was fulfilling the duties of his employment or performing a task incidental to the conditions under which those duties were to be performed. It is almost too obvious to state that sexually harassing a young female coworker is not a duty of a male teletype operator and is not incidental to the duties of a male teletype operator. Moreover, employee's alleged injury did not arise in the course of an activity related to employment. Again it is almost too obvious to

state that sexually harassing a young female coworker is not an activity that carries out the employer's purposes or directly or indirectly advances the employer's interest. Since employee cannot demonstrate a nexus or causal relationship between his injury and his employment, he is not entitled to workers' compensation benefits.

Third, employee's act of sexually harassing the clerk is not a deviation from work that was substantially motivated by influences that originated in employment. On the contrary, employee's act of sexually harassing the clerk was motivated by his own desire for sexual excitement and possibly by his desire to manipulate the clerk.

Finally, we are not persuaded that the employee's alleged psychic injury should be compensable. As we noted in *Seitz*, adverse interpersonal relations among workers occur at times. Moreover, the employee cannot expect to be sheltered from all adverse stimuli in the workplace. The treatment he received from his coworkers was a direct, foreseeable consequence of his own unacceptable conduct. It was not work related. Therefore, the employee's petition for workers' compensation benefits should be denied. To hold otherwise would, in our opinion, expose every employer to claims of compensable disability from any employee who encounters social disapproval resulting from that employee's own misconduct.

For the reasons stated, the employer's petition for issuance of a writ of certiorari is granted, the decree of the Workers' Compensation Appellate Division is quashed, and the papers of this case are remanded to the Workers' Compensation Court, Appellate Division, with our decision endorsed thereon.