DECISION
This matter is before the Court on the plaintiff's motion under G.L. 1956 (1995 Reenactment) § 28-9-17 to enforce an arbitration award and the defendant's motion pursuant to §28-9-18 to vacate that award. The award, rendered in accordance with the terms of a collective bargaining agreement accepted as valid by the parties for the purposes of this case, entitled the grievant, a member of the plaintiff collective bargaining representative, to injury on duty (IOD) status for work related stress both retroactively and prospectively. The defendant argues that the award must be vacated for three reasons: First, the arbitrator exceeded her powers because the award was not a rational interpretation of the contract. Second, the award violated a public policy of the State. Third, the award was procured by fraud. The plaintiff disputes all of the grounds to vacate the award and contends that the Court must confirm it.
The grievant, Coley O'Rourke, joined the Providence Fire Department on March 16, 1992 at the age of 22 years. Eventually, after a series of unusual events in his short career as a fire-fighter, which the arbitrator found to be pertinent to her award, but over which this Court will not pause, on February 21, 1995, he came to be working in the fire department's carpentry shop on a probationary status. Claiming to be upset over his treatment by a work supervisor, O'Rourke left work on February 23, 1995 at 10:30 a.m. on sick leave. On March 7, 1995 O'Rourke requested IOD status, which was denied by the respondent on April 26, 1995. Arbitration was timely demanded and after full hearing the award was handed down on April 24, 1997.
At the hearing O'Rourke testified to his stress-related disability. His claim was corroborated by the uncontradicted and uncontroverted opinions of three physicians, including a physician appointed by the defendant to examine O'Rourke. All agreed that O'Rourke's disabling symptoms were related to his stressful work situation. Each of the examining physicians referred to stress on the job which did not arise from the usual stresses arising out of the normal work of fire-fighting duties. The stresses came from particulars obviously relating only to the relationship between the department and O'Rourke.
The collective bargaining agreement provides simply: "Members of the bargaining unit who are injured in the line of duty shall receive full salary while their incapacity exists or until they are placed on disability retirement." It is important to considerG.L. § 45-19-1, since the parties to a collective bargaining agreement may not agree to provide less benefits to an employee than those specified in a statute, but they may, of course, agree to greater benefits. See Chester v. aRusso, 667 A.2d 519 (R.I. 1995). Section 45-19-1 provides that a fire-fighter, who is wholly or partially incapacitated "by reason of injuries received or sickness contracted in the performance of his or her duties," shall receive from his public employer the salary or wage benefits to which the fire fighter would be entitled if not incapacitated. Obviously, "in the line of duty" in the agreement means the same as "in the performance of his or her duties" in the statute. The fact the agreement does not refer to "sickness contracted" must, to be lawful, mean that sickness is included in the term "injured" in the agreement. Otherwise, the provision would be void as an attempt to limit by agreement benefits granted by law.
The arbitrator was initially confronted by two problems of contractual interpretation. First, were O'Rourke's stress-induced disabling symptoms an "injury" as mentioned in the agreement. Second, was there any legal requirement to exclude some work-related stresses generally from the term "injury" as used in the agreement. Then, of course, she was called upon to decide whether the evidence before her proved a stress-related incapacity within that legal limitation, if there were any, once she had construed the meaning of the agreement.
The arbitrator could have decided that the contractual provision was limited to physical injuries and that a fire fighter disabled by stress was left to the relief afforded by § 45-19-1 for so-called mental injury. Instead, she chose to treat the contractual provision as an embodiment of the statutory relief within the contract, so that the grievance and arbitration provisions of the collective bargaining agreement would relieve a claimant from the requirement of a lawsuit to resolve a disputed claim for disability benefits.
Therefore, the question then arose as to whether incapacity resulting from work-related stress is included in the agreement and § 45-19-1. After all, because the work of fire fighters may be regarded as routinely stressful, it might be that only traumatic injuries or environmental occupational diseases were intended to be included in the statute and the agreement.
Because § 45-19-1 has been held to be a provision for work related injury benefits greater than those provided by the Workers Compensation Act, because of the dangerous nature of the work performed by employees entitled to the benefits of the section, the arbitrator might have been justified in making no reference to the Workers Compensation Act. See Labbadia v. State,513 A.2d 18, 21-22 (R.I. 1986).
It is important to note that the arbitrator did not feel compelled to follow the law enacted in the Workers Compensation Act and the decisions of our Supreme Court construing the Act. She looked to the Act and the case law for guidance only as to the meaning of the injury provision in the agreement and the statute. The different standards of causation in the two statutes is apparent. In the Workers Compensation Act an employee is entitled to benefits if the employee "receives a personal injury arising out of and in the course of his employment, connected therewith and referable thereto . . ." G.L. 1956 (1995Reenactment) § 28-33-1. Benefits are available under §45-19-1 for "injuries received or sickness contracted in the performance of his or her duties." The difference in language could be held to signal a more liberal causation standard for the beneficiaries of § 45-19-1. In any event, on this appeal neither party faults the arbitrator for turning to the Workers Compensation Act and cases construing the Act for guidance.
The Workers Compensation Act treats the disablement of any employee resulting from an occupational disease or condition described in a schedule as the happening of a personal injury. Included in the list of compensable occupational diseases or conditions is the following:
 "The disablement of an employee resulting . . . from a mental injury caused by emotional stress resulting from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees encounter daily without serious mental injury shall be treated as an injury . . ." Section 28-34-2(36).
This subsection was added to the Act by P.L. 1982 ch. 32, art 1,§ 8 in obvious response to the decision of the Supreme Court in Seitz v. L R Industries, Inc. (Palco Products Division),437 A.2d 1345 (R.I. 1981). In that case a claim for workers compensation for "psychic" injury was denied as a matter of law because the claimant failed to establish a sufficiently "dramatically stressful stimulus." Seitz, supra, at 1351. The claimant's testimony of a stressful period of employment did not "exceed the intensity of stimuli encountered by thousands of other employees and management personnel every day." Id.
One cannot fault the arbitrator for adopting the requirements of § 28-34-2(36) for a construction of the agreement, as applied to this case, where the claimant does not seek line of duty disability benefits for a stress disorder arising from the continued encountering of hazardous and traumatic conditions usually associated with the official duties of fire fighters. SeeAetna Casualty Surety Company v. Vierra, 619 A.2d 436, 438-39 (R.I. 1993). It would appear, then, that, even though she may not have been required to do so, the arbitrator required that the claimant show that he was subjected to "emotional stress resulting from a situation of greater dimensions than the day-to-day emotional strain and tensions which all employees encounter daily without serious mental injury," as required by § 28-34-2(36).
The arbitrator painstakingly reviewed the evidence presented to her. She found that the humiliating and degrading treatment of O'Rourke during his few hours of employment after February 21, 1995, which he reasonably perceived to be an effort to set him up to be fired, constituted dramatic and extraordinary treatment which caused him disabling stress. This Court has no jurisdiction whatever to re-weigh the quantum or quality of evidence presented to an arbitrator. The award is not before the Court for appellate review, as in Martone v. State of Rhode Island/Registry of MotorVehicles, 611 A.2d 384 (R.I. 1992), nor even for the kind of judicial review appropriate for the decisions of administrative agencies. Although as a matter of convenience and custom there is a record of the proceedings before the arbitrator and the arbitrator did furnish the rationale for her award, she was not required to do so.
Judicial review of labor relations arbitration is strictly limited to the grounds set out in § 28-9-18. Even if the "manifest disregard of the law" grounds were available to the Court they could scarcely apply in this case where the arbitrator went out of her way to consider an analogous body of law in a closely related, but obviously different area of compensation for injuries in employment. She cannot be said to have exceeded her powers where the precise issue submitted to her was the question of the application of a particular contractual provision in a collective bargaining agreement to a dispute arising out of that very agreement.
The defendant's argument that the award violates some well-defined public policy of the State must fail for much the same reasons that its argument that the arbitrator exceeded her powers or manifestly disregarded the law fails. Even if §28-34-2(36) is the reflection of a public policy of State, and not just an ordinary legislative enactment in pursuance of some public policy, the arbitrator used that very provision in construing the contract terms, as well as for § 45-19-1, which might serve quite a different public policy from that reflected in § 28-34-2(36). It is noteworthy that even though § 45-19-1 has been revisited and amplified by amendment and addition since 1982, the General Assembly has never attached to it any expression of the public policy claimed to be expressed in § 28-34-2(36) and the cases decided under that provision.
Reviewing the facts as represented in this case a court may well come to a different conclusion from that of the arbitrator on whether the evidence supported a valid claim under §28-34-2(36), but the arbitrator's fact-finding is not subject to judicial review. Nor may her award be vacated simply for a mistake of law, if she made one. A skilled and experienced labor relations arbitrator may even be a better judge of what is "the day-to-day emotional strain and tension which all employees encounter daily without serious mental injury" than those who may not have recently been exposed to that emotional strain and tension. The defendant argued, "persuasively" says the arbitrator, that O'Rourke's harassment was minimal and did not satisfy the standard set by § 28-34-2(36). But, the arbitrator says that O'Rourke's harassment, however brief, was far from routine. There seems to be room for reasonable minds to differ on this evidence. Even if the Court had some jurisdiction to consider this evidence, it could not disturb the conclusion reached by the arbitrator.
Finally, the defendant argues that the award was procured by fraud. The fraud it claims to have been perpetrated by the plaintiff was his false testimony to the arbitrator and, apparently, the history he gave to all three examining physicians regarding the cause of his stress when he left work on February 23, 1995.
A careful review of the affidavits submitted by the defendant to support its claim of fraud shows that they either do no more than impeach the defendant's version of the events of February 21, 22 and 23, 1995 in the department carpentry shop or that the defendant did not mention those events when he sought the plaintiff's assistance in pursuing his claim. The evidence in the affidavits regarding the events in the carpentry shop was obviously available to the defendant at the time of the arbitration hearings in the sense that it readily could have been discovered and produced with even the slightest effort by the defendant.
The defendant argues that it was surprised when O'Rourke claimed at the arbitration that his mental injury was caused by the stress of the last few days of his work and not by his prior work history. It is difficult to believe that the defendant did not, prior to the hearing, recognize the importance of the few days leading up to O'Rourke's leaving work. Accordingly, the testimony of Ronald Johnson, John Mullen and Peter D'Ambra, while certainly material and relevant, was available to the defendant at the time of the hearing, but was simply neither sought nor presented because the defendant relied on its theory of the legal insufficiency, rather than the factual inaccuracy, of the plaintiff's case.
The evidence regarding O'Rourke's statements to plaintiff's executive committee, presented in the affidavits of Stephen Day, David Curry, Scott Mello, and Thomas Peckenham, which omitted any reference to the February 1995 events, would have been admissible as prior inconsistent statements even though our formal rules of evidence do not apply to arbitration hearings. In any event, they could have persuaded the arbitrator to discredit O'Rourke's testimony about the stress he claimed to have suffered by reason of the bathroom cleaning incident. It should be noted that the inconsistency arises from O'Rourke's failure to mention the incident, when he would have been expected to do so, and not from any positive averment that the incident did not happen and did not have the stressful consequences that O'Rourke claims for it. While this evidence, if timely presented, would have been considered by the arbitrator and may have affected her decision, it does not rise to the level of the clear and convincing standard which would enable this Court to find she was defrauded.
One last word before this Decision closes. It is important to remember that the parties agreed to submit this dispute to arbitration in their collective bargaining agreement and later by their mutual submission. They were fully aware of the potential infirmities of that system as well as its potential advantages. They could have collectively bargained to have withdrawn this kind of dispute from arbitration. They failed to do so. They expressly and freely agreed to accept an arbitrator's resolution both of the meaning of their agreement and of its application to a factual situation arising out of the employment relationship between them.
To the extent that a court, any court, substitutes its personalized notion of justice for the fruits of the bargain freely struck between the parties, to that extent the freedom of the parties to bargain collectively and freely is diminished. If these parties want the strictures of G.L. § 28-34-2(36)
embodied in their agreement nothing prohibits them from doing so. If these parties want to bargain § 45-19-1 out of their agreement by affording employees greater benefits, they are free to do so. But, so long as the parties have knowingly and freely agreed to arbitrate line of duty status for injured employees, they have agreed to accept the risk of a wrong, even unjust, award as part of the price of peaceable labor relations. The freedom to bargain collectively is simply too precious to subject to ad hoc judicial upset in the interest of subjective and amorphous notions of justice.
The motion to vacate the award is denied. The motion to confirm the award is granted. The plaintiff will present a form of judgment for entry under the provisions of G.L. § 28-9-22.