DECISION
Before the Court are the Motion to Confirm the Arbitration Award filed by Plaintiff Foster-Glocester Regional School Committee (Committee) and the Motion to Vacate the Arbitration Award filed by Defendant National Education Association Ponaganset/NEARI/NEA (Association). The Court has jurisdiction pursuant to G.L. 1956 § 28-9-14.
 Facts/Travel
The Foster-Glocester Regional School Committee and the National Education Association/Ponganset/NEARI/NEA were parties to a collective bargaining agreement that was in effect from July 1, 1996 to June 30, 1999. In December of 1999, the Association, which represented employee Michael Bailey (Bailey or Grievant), a physical education teacher at Ponaganset High School, filed a grievance. The parties stipulated to their reliance on the collective bargaining agreement (Agreement) effective on June 1, 2000 through June 30, 2003 as being applicable since the pertinent language is identical to that of its predecessor. Pursuant to the agreement between the parties, they proceeded to arbitration.[1]
The parties agreed on the following issue to be decided by the Arbitrator:
"[w]as the termination of Michael Bailey by the Foster Glocester Regional School District for just cause? If not, what shall be the remedy, if any?" (Decision at 1.) To answer this question, the arbitrator embarked on three distinct lines of analyses:
 "[f]irst, is the conduct complained of inappropriate and worthy of discipline. Secondly, is there credible evidence that the Grievant actually did what he was accused of and has that evidence been established by a clear and convincing standard? Thirdly, if it is demonstrated by clear and convincing evidence that punishable activities were actually committed by this Grievant, does the punishment imposed fit the overall situation and can the arbitrator thereby conclude that just cause exists for the action of the School Committee?"
(Decision at 28-29.)
Bailey, a 15-year employee, began his career with the Committee as a Mathematics teacher in the middle school and a Science teacher in the high school. In 1987, Bailey was hired by the Committee as a full-time Physical Education teacher in the Ponaganset High School. The grievance and Bailey's ultimate discharge can be traced to October 1998 when Bailey first approached Ronald Palmieri (Palmieri), Principal of Ponaganset High School, regarding Brianne Doyle (Doyle), a student at the school. Earlier in the year, Bailey was concerned that Doyle had been circulating rumors throughout the school about a relationship between them. Bailey met with Doyle and explained the inappropriateness of her actions in an attempt to convince her to stop making such comments. Bailey failed to mention these rumors or his conversation with Doyle to anyone in the school administration. It appeared that the problem was resolved until Bailey was told by the school nurse, Judy Jessup (Jessup), that information had come to her attention that Doyle had been driving by Bailey's home. Bailey immediately informed Palmieri of the situation and the matter was brought to the attention of David Costa (Costa), Superintendent of the School District. After conducting an investigation into the matter, Costa issued a letter to Bailey on November 18, 1998, stating that there was "no evidence that you engaged in any misconduct." (Union Exh. 3.) However, the letter went on to admonish Bailey for his poor judgment in dealing with Doyle and his failure to bring the matter to the attention of the school administration earlier. Despite all this, Bailey had further contact with Doyle and allowed himself to be in a situation, playing racquetball in the gymnasium, where he was alone with this student. Bailey informed the school about this incident only after receiving a letter and photographs from Doyle.
In May 1999, Doyle's lawyer issued a letter to Palmieri regarding the "inappropriate touching and language" of Bailey towards Doyle. In response, Palmieri conducted an investigation into the charges raised by Doyle and discovered other female students who were also alleged subjects of Bailey's inappropriate behavior. Bailey denied any inappropriate actions or verbal statements with any of the students. As part of his investigation, Palmieri interviewed and received written statements from these students. In a letter dated December 7, 1999, Costa informed Bailey that he would be "recommending to the Foster-Glocester Regional School Committee that your employment as a teacher be terminated for inappropriate conduct with students." (Union Exh. 1.) The school administration claimed to have "found credible complaints that [Bailey] engaged in inappropriate behavior with the following students": Jamie Laliberte, Brianne Doyle, Jenna Plante and Mia Campobianco. On December 14, 1999, the School Committee conducted a pre-termination hearing at which it received no evidence or testimony from witnesses. The Committee voted to terminate Bailey's employment as a physical education teacher at Ponaganset High School.
The Association filed a grievance on behalf of Bailey contesting his termination by the Committee. In accordance with the Agreement, the parties agreed to submit said grievance to arbitration. The American Arbitration Association appointed Francis X. Flaherty (Arbitrator) as the arbitrator in this matter. Arbitration hearings were held on September 12, November 30, and December 1, 2000, as well as on January 9, 18 and 19 of 2001. The arbitration resulted in the denial of the Association's grievance and in the determination that the Committee had just cause to terminate Bailey's employment. With respect to the first issue, the Arbitrator found that "it is obvious that the School Committee believes that the allegations complained of are serious transgressions . . . Clearly, the acts of which this Grievant is accused are inappropriate." (Decision at 29.) Moreover, the Arbitrator was "satisfied that there is clear and convincing evidence that the Grievant did what the witnesses described and that those actions were inappropriate for a teacher." (Decision at 33.) Finally, after serious consideration of the penalty to be imposed, the Arbitrator "believe[d] that the School Committee had just cause to terminate the Grievant from his employment as a teacher at Ponaganset High School." (Decision at 34.) As such, he denied the grievance.
On April 30, 2001, this Court entered judgment on behalf of the Committee, thereby confirming the arbitration award. Finally, the parties agreed and stipulated on May 7, 2001 that the Order confirming the arbitration award and judgment would be vacated. Thus before this Court are the Motion to Vacate the Arbitrator's Award filed by the Association and the Motion to Confirm filed by the Committee. The Association argues the arbitrator exceeded his authority in upholding Bailey's termination and in finding that the Committee had just cause to terminate Bailey because the degree of discipline administered by the Committee did not reasonably relate to the seriousness of the charges imposed against Bailey and his employment record.
 Standard of Review
Pursuant to G.L. 1956 § 28-9-18(a), this Court must vacate an arbitration award
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract and the objection has been raised under the conditions set forth in 28-9-13.
It is well-established that this court has very limited power to disturb an arbitrator's award. To this end, the Rhode Island Supreme Court has "long recognized that the authority of the judiciary to review . . . the merits of an arbitration award is extremely limited." Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL-CIO, 763 A.2d 604, 605 (R.I. 2000) (quoting State Department of Mental Health, Retardation and Hospitals v. Rhode Island Council 94,692 A.2d 318, 322 (R.I. 1997)). Thus an arbitration award will typically be upheld unless it results from "a manifest disregard of a contractual provision or a completely irrational result." Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998). Thus, it is only when an arbitration award fails to embody even a "passably plausible" interpretation of the contract that it must be struck down by the court upon review. Town of North Providence, 763 A.2d at 606 (citing Westcott Construction Corp. v. City of Cranston,586 A.2d 543, 543 (R.I. 1991) ("[A]s long as the award draws its essence from the contract and is based upon a `passably plausible' interpretation of the contract, we shall uphold it.")). The party objecting to judicial confirmation of the arbitrator's decision and award carries the heavy burden of proving that the decision and award represents a manifest disregard of the provisions of the collective bargaining agreement or concludes therefrom an irrational result. Town of Coventry v. Turco,574 A.2d 143 (R.I. 1990); Coventry Teachers' Alliance v. Coventry School Committee, 417 A.2d 886, 888 (R.I. 1980).
Moreover, "because arbitration is a creature of the agreement, the preliminary issue for a reviewing court must be whether the parties derive from the contract an arbitrable grievance." Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections, 707 A.2d 1229, 1234 (R.I. 1998) (quoting Rhode Island Court Reporters Alliance v. State of Rhode Island, 591 A.2d 376, 378 (R.I. 1991) (citation omitted)). Whether that issue or grievance is arbitrable is a question of law to be reviewed by the court de novo. State v. Rhode Island Alliance of Social Services Employees, Local 580, SEIU, 747 A.2d 465, 468 (R.I. 2000) (quoting Rhode Island Council 94 AFSCME, AFL-CIO v. State, 714 A.2d 587, 588 n. 2 (R.I. 1998)).
 The Arbitrator's Decision
The Agreement itself does not deal directly with the Committee's authority to dismiss a teacher although there are two provisions that indirectly deal with the matter. Article XV, Section C of the Agreement governs this situation and provides that "[n]o teacher will be arbitrarily disciplined, reprimanded, deprived of any professional advantage, or reduced in rank or compensation. An aggrieved party shall have full recourse to the prescribed grievance." Also, Article XXII, Section B states "[s]eniority shall be broken by: 1. resignation; 2. dismissal for job-related performance, which is not overturned by an agency or court of competent jurisdiction." The parties agreed to proceed to arbitration under the "for cause" standard articulated in G.L. 1956 § 16-13-4. The burden of proving that the Arbitrator reached an irrational result or one based on a manifest disregard of a contract falls to the party objecting to judicial confirmation of the arbitrator's decision and award, in this case, the Association.
Thus the Association had the burden of proving by clear and convincing evidence that the dismissal of Bailey was not supported by just cause. The Association argues that the Arbitrator exceeded his authority in sustaining the termination of Bailey by finding that the Committee had just cause to terminate Bailey's employment. First, the Association maintains that the degree of discipline imposed in this case did not relate to the seriousness of Bailey's offenses, which includes "the touching of students in an inappropriate way and specifically involves the slapping of the buttocks of Laliberte, the squeezing of the sides and lifting of Campopiano, and the hugging and kissing of Plante." (Decision at 29.) The Association's attempt to recast Bailey's conduct as less egregious, given the public nature of the contact, rings hollow. The Arbitrator found it unneccessary to conduct a detailed analysis into whether the conduct complained of was inappropriate. Although the Grievant "steadfastly den[ied] that he actually did any of the things the witnesses accused him of, he nonetheless admitted that those actions, if done by a teacher, would, in fact, be inappropriate." (Decision at 29.) Thus it was undisputed that such actions, if performed by a teacher, are inappropriate. Having determined that the conduct was inappropriate, the abitrator next turned to the issue of whether there was credible evidence to support the allegations.
It is well-settled that "except for complete irrationality, arbitrators are free to determine the facts before them without having their award become subject to judicial revision." Romano v. Allstate Ins. Co.,458 A.2d 339, 341-2 (R.I. 1983). As fact finder, the arbitrator is "in the best position to observe the appearance of a witness, his or her demeanor, and the manner in which he or she answers questions." Poisson v. Comtec Information Systems, Inc., 713 A.2d 230 (R.I. 1998) (quoting Blecha v. Wells Fargo Guard-Company Service, 610 A.2d 98, 103 (R.I. 1992)). Given the nature of this case, the Arbitrator noted:
 "the credibility of witnesses is vital in coming to factual determinations. It is important for the finder of fact to not only filter the oral testimony through a critical prism, but also to observe all of the witnesses' demeanor and to weigh whatever bias or interest each witness may have in the matter." (Decision at 30.)
The Arbitrator found that there was credible evidence that the Grievant committed the acts of which he was accused. The Arbitrator expressed grave concern about the number of students that lodged allegations against the Grievant. In addition, the Arbitrator found it "noteworthy that there [was] no evidence, whatsoever, that there is any connection between the witnesses nor any evidence that they coordinated their stories in any way." (Decision at 30.) In stark contrast, the Arbitrator discounted the testimony of Doyle, who he found was "extraordinarily hostile and obviously bore a grudge against the Grievant." (Decision at 32.) Moreover, he had "difficulty accepting the testimony of the Grievant at face value." (Decision at 32.) The Arbitrator was particularly troubled by the fact that while the Grievant denied any misconduct with Plante "he could recollect in minute detail the way that he touched her." (Decision at 32.) The Arbitrator's findings that the conduct complained of was inappropriate and that sufficient credible evidence existed to support those allegations belies the Administration's claim that the degree of discipline imposed by the Committee did not bear on the serious nature of the offenses. Bailey's discharge from his position as physical education teacher at Ponaganset High School was directly related to the serious offenses with which Bailey was charged.
The second issue raised by the Association is that the degree of discipline administered in this matter fails to take into consideration Bailey's fifteen years of valued service. This argument is based on the principle of progressive discipline, that is "a tool to bring about change in the behavior of employees, reserving termination for those guilty of serious offenses and those who have run the gamut of progressive discipline and have shown themselves to be incorrigible." Gosline, Bornstein and Greenbaum, Labor and Employment Arbitration, 14.03[3] (2001). To further emphasize this point, the Association quoted the Rhode Island Supreme Court as stating that "we must ensure that the punishment for a work-related offense is proportionate to the offense committed." Martone v. State of Rhode Island, 611 A.2d 384, 385 n. 1 (R.I. 1992). However, within this same footnote, the court stated "[w]e are not of the opinion that termination of employment is too harsh a penalty for a person who has subjected a fellow employee to the type of treatment involved here . . . [S]exual harrassment is a degrading experience for the victim and is a serious offense that should be punished by a severe sanction." Id.
Nonetheless, the progressive disciplinary approach has been recognized by the Rhode Island Supreme Court. For example, in Center for Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 683 (R.I. 1998), a case involving a pregnancy discrimination claim, the Supreme Court noted
 "the disciplinary actions are progressive in nature — an oral reprimand, which is the first warning that the behavior of an employee is unacceptable; written reprimand, which becomes a permanent part of the employee's file; probation, which is considered a severe warning issued in writing that explains clearly that action will be taken if certain deficiencies are not corrected within the probationary period; and finally suspension and termination." (Emphasis added.)
The Association cites a number of arbitration cases and legal authorities that "recognize that progressive discipline should be administered and seeks to correct behavior, rather than punish." (Def. Memo. of Law at 9.) However, even the authors of the treatise relied upon by the Association recognized the inherent limitations of progressive discipline when they wrote:
 "[d]espite the parties' commitment to progressive discipline and the effort to rehabilitate wayward conduct, certain offenses are so unacceptable as to preclude more than one such violation. Arbitrators generally endorse the concept of immediate termination for such capital offenses as theft, taking drugs or alcohol while piloting an aircraft, industrial sabotage, engaging in an unprovoked fist fight with one's supervisor, as well as for capital offenses unique to a particular enterprise, such as smoking in a dynamite factory. The rationale for termination without progressive discipline in such cases is that the infraction is so obviously unacceptable that the employee should have known that it would not be tolerated. To condone such egregious behavior by imposing a penalty less than termination would set a precedent for others to claim a right to reinstatement after such an infraction." (Citation omitted.) Gosline, Bornstein and Greenbaum, Labor and Employment Arbitration, 14.03[3] (2001).
The nature of the offenses for which Bailey was charged, inappropriate behavior and language toward certain female students, are such that immediate termination rather than progressive discipline would be warranted. In addition, Bailey was involved in more than one incident involving inappropriate touching or language toward a student.
The Association cites a number of arbitration cases that bear some similarity to the case at hand. However, these cases are distinguishable from the instant case given the positions held by the Grievants or the relationships between the Grievant and the victim. These cases fall into two distinct fact patterns. One line of cases involved the following: a grievant who sexually harassed a female co-worker, was discharged by his employer and the discharge was deemed too severe by the arbitrator, see e.g. Hyatt Hotels Palo Alto, 85 L.A. 11 (1985) (assistant banquet manager unzipped his pants and exposed his genitalia to two female coworkers); Dayton Power and Light Co., 80 LA 19 (1982) (meter man for the light company discharged for pinching the breast of a female coworker); Boys Markets, Inc., 88 LA 1304 (1987) (food clerk discharged for touching buttocks of female employee); Fisher Foods, Inc., 80 LA 133 (1983) (arbitration award where stockman received only three-day suspension for pinching the breast of female coworker was upheld). Other cases involved grievants who were fired after being caught possessing or using drug while on the job: Monfort Packing Co., 66 L.A. 286 (1976) (boner in meat fabrication department discharged for smoking and possessing marijuana at the work site); Southwestern Bell Telephone Co., 59 L.A. 709 (1972) (stockman terminated for possession of drugs on the job). In stark contrast, Bailey, charged with the care of our youth, was employed as a high school physical education teacher at Ponaganset High School. It is the very nature of the relationship between a teacher and his students that provides crucial support for the arbitrator's decision to uphold the Committee's dismissal of Bailey.
The arbitrator noted the relationship between a teacher and his students and he relied upon these principles to arrive at his decision, as evidenced by his statements that
 "[t]he Administration, faculty, staff, students and parents have every right to expect that school children committed to the care of teachers will be safe and that teachers' conduct towards the students committed to their charge will be beyond reproach. Although it is not in their job specifications, teachers are role models who are and should be respected members of society. The School Committee was justified in finding that the Grievant failed to meet the standard of behavior which the community expects of educators." (Decision at 34.)
In the often quoted United States Supreme Court decision, Brown v. Board of Education, 347 U.S. 483, 397 (1954), the Court stated:
 "education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship. Today it is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education."
Thus, it is the duty of our state government "to promote public schools . . . and to adopt all means which it may deem necessary and proper to secure to the people the advantages and opportunities of education." (Constitution of the State of Rhode Island and Providence Plantations, Art. XII of Eduction, Sec. 1.) Teachers play a critical role in carrying out this mandate. They have the tremendous task of "aim[ing] to implant and cultivate in the minds of all children committed to his care the principles of morality and virtue." G.L. 1956 § 16-12-3.
In Cranston School Committee v. Cranston Alliance, C.A. No. PC 95-2950, July 24, 1995, Israel, J., the Court was faced with an arbitrator's award imposing a one year suspension without backpay or benefits on a culinary arts teacher who was deemed to have engaged in "unprofessionally casual, [and] excessively friendly relations" with students. The arbitrator determined that by "accepting [a student's] expressions of affection — hugs, kisses and backrubs — was, indeed a serious offense and an abuse of his authority and trust as a teacher." Id. at 2. The teacher was discharged by the school committee, a decision the arbitrator deemed "excessive and unjustified." Id. In response to motions to vacate or confirm the arbitrator's decision that Court "respectfully decline[d] to be the instrumentality of the return of this employee to a high school culinary arts classroom" and vacated the arbitrator's award. Id. at 6. This court here notes Judge Israel's reasoning:
 "[t]he Committee is not only the employer of its teachers. It is also the agency of government charged with responsibility for the physical, mental and moral health of the pupils in its school systm. While it can bargain away its rights with respect to the condition of employment of its teachers, surely it cannot be permitted to bargain away its governmental responsibilities for the health and safety of its pupils. It violates the clear public policy of this State to compel the Committee to expose pupils in this State to compel the Committee to expose pupils in one of its schools to the plainly foreseeable risk of harm from the classroom presence of a person, whose misconduct, as found to have been proved by the arbitrator, is unacceptable to it."
In the instant case, the arbitrator also noted the responsibility of the Committee to the pupils
After review, this Court finds that the arbitration award does not represent a manifest disregard of a contractual provision or a completely irrational result. For the foregoing reasons, the Motion to Vacate is denied, and the Motion to Confirm is granted.
Counsel shall present the appropriate judgment for entry in accordance therewith.
[1] The subject arbitration award is denominated as American Arbitration Association Award ("AAA") Case No. 11 390 00218 00 (hereinafter "Decision").